AMERICAN BOND & MORTGAGE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11799. Promulgated February 8, 1929.

*Willis D. Nance, Esq.*, and *Dwight P. Green, Esq.*, for the petitioner.

*Harry LeRoy Jones, Esq.*, for the respondent.

268

OPINION.

TRAMMELL: The petition filed herein purports to constitute an appeal from the determination by the respondent of the petitioner's tax liability for the calendar years 1920 and 1921, and states that the taxes in controversy are income and profits taxes for said years. It appears from the deficiency letter, as well as from the allegations of the petition, that the respondent determined an overassessment in the amount of $42,615.85 for the year 1920, and a deficiency in the amount of $62,452.12 for the year 1921, said overassessment representing the difference between the tax shown on the original return for 1920 and the amount of the tax liability as determined by the respondent for said year. In this situation we have no jurisdiction to redetermine the tax liability for the calendar year 1920, and the appeal, in so far as it involves said year, is hereby dismissed. See Revenue Act of 1926, section 274(g); *Cornelius Cotton Mills*, 4 B. T. A. 255.

The facts material in this proceeding have been stipulated by the parties, and the sole issue of law raised by the pleadings relates to the correct method of computing the consolidated invested capital of a group of class A affiliated corporations, except that the petitioner alleges that it is entitled to special assessment of its profits tax in the event the respondent's action in reducing its invested capital should be sustained.

Section 326 of the Revenue Act of 1921 defines invested capital as including the "actual cash value of tangible property, other than cash, bona fide paid in for stock or shares, at the time of such payment."

Section 240 (a) of the Revenue Act of 1918, made applicable to the calendar year 1921 by section 240 (e) of the 1921 Act, provides in part material here, as follows:

That corporations which are affiliated within the meaning of this section shall, under regulations to be prescribed by the Commissioner with the approval of the Secretary, make a consolidated return of net income and invested capital for the purposes of this title and Title III, and the tax thereunder shall be computed and determined upon the basis of such return.

In December, 1910, a certain leasehold estate and office building located at 127 North Dearborn Street, in the City of Chicago, were paid into the Unity Safe Deposit Co., hereinafter referred to as the deposit company, for its entire capital stock of the aggregate par value of $650,000. The tangible property so paid in for stock, had a value, at the time of such payment, of not less than $650,000, and the stock so issued therefor was fully paid at the time of issue.

In April, 1919, capital stock of the deposit company, of the par value of $250,000, was surrendered by the stockholders and canceled without any payment therefor being made by the company to the stockholders. The outstanding capital stock of the company was thus reduced to $400,000, consisting of 4,000 shares of the par value of $100 each.

In May, 1919, Mrs. Hattie K. Moore, wife of the president of the American Bond & Mortgage Co., petitioner herein, purchased the entire outstanding capital stock of the deposit company, of the par value of $400,000, for $50,000 cash.

On August 30, 1919, Mrs. Moore sold 1,000 shares and donated 3,000 shares of the capital stock of the deposit company to the petitioner corporation. In this manner the petitioner acquired all of the outstanding capital stock of the deposit company at a total cost to it of $51,710 cash, and at said date the value of said stock was not less than $400,000.

In computing the consolidated invested capital of the affiliated corporations, the petitioner included the amount of $348,290 as paid-in surplus, this being the difference between $400,000, the par value of the capital stock of the deposit company, and $51,710, the amount paid by the petitioner for said stock. The respondent eliminated or disallowed said amount, and thus reduced the consolidated invested capital to that extent, which action the petitioner has assigned as error.

The respondent in his brief contends substantially that decision of the issue presented here must be controlled by the limitation of section 331 of the Revenue Act of 1921, which provides that in the case of the change of ownership of property after March 3, 1917, if an interest or control in such property of 50 per centum or more remains in the same person and if the previous owner was not a corporation, the value of any asset so transferred or received shall, for the purpose of determining invested capital, be taken at its cost of acquisition, at the date when acquired by such previous owner.

Accordingly, the respondent urges that, since the petitioner acquired the stock of the deposit company from Mrs. Moore on August 30, 1919, which was subsequent to March 3, 1917, and since Mrs. Moore, on and after August 30, 1919, retained an interest or control in such property of more than 50 per centum by virtue of the fact that she owned 62 per centum of the voting stock of the petitioner corporation, the case falls squarely within the provisions of section 331 *supra*, and the value of the stock can not be included in the invested capital at more than the amount of $50,000, the cost of its acquisition when acquired by the previous owner, Mrs. Moore.

In support of his argument that section 331 constitutes a complete bar to the allowance of the petitioner's claim, the respondent cites a number of our previous decisions, applying the provisions of said section. However, the cases cited are easily distinguishable from the present proceeding, for the reason that in no instance was the computation of consolidated invested capital of affiliated corporations involved.

If we were concerned here only with the computation of the statutory invested capital of the petitioner, American Bond & Mortgage Co., as a separate corporation, it might well be that the respondent's argument would be predicated upon a sound basis. But in the instant case the issue presented concerns the proper method of computing the consolidated invested capital of the affiliated group, and the value of the stock of the deposit company, purchased by the petitioner from Mrs. Moore, does not enter into that computation as a capital asset of the petitioner. Hence, the provisions of section 331 have no application.

We have repeatedly held that consolidated invested capital should be determined by computing separately the statutory invested capital of each corporation, as defined by section 326, and then eliminating from the combined statutory invested capital of the affiliated group, so determined, the amount of any duplications which may appear. In addition to duplications, if any, the statutory invested capital, as defined by section 326, must also be reduced by the amount of any liquidating dividend, or amount otherwise withdrawn from the original investment and returned to the stockholders.

In *Middlesex Ice Co. et al.*, 9 B. T. A. 156, we had before us a question involving the determination of consolidated invested capital, and in the course of our opinion, we said:

Each member of the affiliated group enters the consolidation with its invested capital as defined by section 326 of the Revenue Acts of 1918 and 1921. From this preliminary exhibit there is then eliminated such items or amounts as are shown to be duplications either of investment or of earned surplus and undivided profits. The law does not specifically provide for, and we are unable to find, that it in any sense contemplates any reduction or elimination of actual assets not appearing as duplications.

Under the taxing statutes, two or more affiliated corporations are to be treated for tax purposes as a single corporation. *Farmers Deposit National Bank and Affiliated Banks*, 5 B. T. A. 520. And the acquisition by one company of the stock of another, thereby creating affiliation, creates no additional investment in the affiliated group. By the act which creates the affiliation, the group acquires a part of its own capital stock. *H. S. Crocker Co.*, 5 B. T. A. 537.

In *Appeal of Grand Rapids Dry Goods Co.*, 12 B. T. A. 696, we considered substantially the same issue as is presented here; that is, the proper method of computing the consolidated invested capital of a group of class A affiliated corporations. In that case, we expressed the opinion that cash paid in for stock of the subsidiary retained its character as such only so long as it was invested in the business, and that when any part of the amount so paid in was withdrawn from the business, it could no longer be classified as " cash bona fide paid in for stock," within the meaning of section 326. Accordingly, we held that, in computing the consolidated invested capital, the cash originally paid in to the subsidiary for its stock should be reduced by the amount paid by the parent company for the stock of the subsidiary, which amount was thus returned to the stockholders and withdrawn from investment in the business, and taken outside of the consolidated group.

In the case at bar, tangible property other than cash was originally paid in to the subsidiary for its stock, and the property so paid in had a value of not less than the par value of the stock at the time of such payment. Hence, the same principle would apply here.

It seems clear that the deposit company, when it was organized in 1910, started off with a statutory invested capital of not less than $650,000. The surrender and cancellation of $250,000 par value of its stock in April, 1919, without any payment therefor being made by the corporation, did not effect any reduction of the statutory invested capital. The amount of the outstanding capital stock was reduced to $400,000 thereby, but its statutory invested capital remained at not less than $650,000, so far as this transaction was concerned.

Thus, the statutory invested capital of the deposit company, at August 30, 1919, when it entered the affiliated group, was not less than $650,000 unless during the years from 1910 to 1919, there occurred a partial liquidation of its capital assets. Whether any liquidating dividends were paid out of capital during said years, we are not informed.

While the parties have stipulated that the value of the assets of the Unity Safe Deposit Co. at August 30, 1919, was not less than

$740,000, we are not advised whether such value was in excess of that amount. There is no evidence as to whether consideration was taken of proper depreciation in determining the amounts of any dividends, nor as to whether any money was borrowed and distributed.

It may well be that the value of $400,000 in excess of liabilities represented in whole or in part appreciation in value of assets. Even if the value of the assets did not exceed $740,000, this would indicate that at least $90,000 represented in the net assets was appreciation, which could not be included in invested capital.

If proper depreciation was not taken and distributions were made to stockholders, clearly the invested capital, as determined by the petitioner, was erroneous.

So far as the record discloses, the actual value of the assets may have been much greater than $740,000. It was merely stipulated that the value was at least that great. If it was greater, then the difference between $650,000 and the excess could not be included in the consolidated invested capital.

The debts, including mortgages, if any, may, so far as we are informed by the record, have exceeded the total amount of the value of the assets at the time paid in for stock, in which event the entire excess of assets over liabilities would be appreciation.

We can not make assumptions as to the facts, and in the absence of evidence to show that the determination of the respondent is erroneous in amount, we must approve his determination, although it is shown that it is based on an erroneous principle.

Having reached the conclusion on the first issue, above indicated, it becomes necessary to consider the alternative issue raised by the petitioner that the exclusion of said amount of $348,290 from the consolidated invested capital constitutes an abnormality within the meaning of section 327 (d) of the Revenue Act of 1921, which entitles it to special assessment of its profits tax as provided in section 328 of said Act.

We have heretofore held that where the excluded asset was a material factor in the production of the taxable income, its exclusion might create an abnormal condition.

In *Clarence Whitman & Sons, Inc.,* 11 B. T. A. 1192, we said:

It was these intangible assets which were the principal cause of the large income which the petitioner enjoyed during the taxable years and on which the deficiencies in question are based. * * * The exclusion must be such as to create an abnormal condition. Where, as here, the asset excluded is the most substantial part of its capital and is the principal contributing factor in the production of taxable income of the petitioner, it is our opinion that such an abnormality exists.

Again, In *J. M. & M. S. Browning Co.*, 6 B. T. A. 914, we said:

\* \* \* The petitioner acquired from the Brownings on January 2, 1915, the contracts involved herein, which had at that time a fair market value of $4,190,000. For the reason hereinbefore stated, the value of these contracts may not be included in the petitioner's invested capital for the year 1918. The contracts produced, however, a large part of the petitioner's income for that year. These conditions, we think, constitute an abnormality within the meaning of section 327(d) of the Revenue Act of 1918, which entitles the petitioner to have its tax liability computed under the provisions of section 328 of that Act.

In the instant case, it is not shown that the excluded assets were a material income-producing factor. However, the deficiency letter discloses that the consolidated net income for the taxable year, as computed by the respondent, was $395,079, while that part of the consolidated net income produced by the Deposit Company was only $19,715.60, or less than 5 per cent of the total. The consolidated invested capital was determined by the respondent to be $905,077.22, and the amount excluded as paid-in surplus was $348,290.

Since the excluded assets produced less than 5 per cent of the taxable net income, as determined by the respondent, and with respect to which no issue was raised by the petitioner, the situation presented in and of itself does not, in our opinion, constitute an abnormality within the meaning of section 327(d) of the Revenue Act of 1921. The petitioner can not, therefore, be sustained on this issue.

Reviewed by the Board.

*Judgment will be entered for the respondent.*