THE GOLDEN CYCLE CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 16378. Promulgated November 9, 1929.

*William V. Hodges, Esq.*, and *D. Edgar Wilson, Esq.*, for the petitioner.

*J. E. Mather, Esq.*, for the respondent.

OPINION.

LITTLETON: The issue in this case arises as the result of events which occurred substantially as follows: The Golden Cycle Co. and the Fuel Company were in existence prior to 1917 and between 1909 and 1916 the former company acquired almost all the capital stock and bonds of the latter. On January 15, 1917, as the result of the Fuel Company being in default on the payment of interest on its bonds and for the purpose of securing a reorganization of that company, the Golden Cycle Co. foreclosed on the bonds of the Fuel Company and purchased the assets of the Fuel Company for $124,-000, an amount less than the face value of the bonds and also much less than the agreed value of the assets on that date. On or about the same day the Consolidated Fuel Co. was organized with a capital stock of $100,000, all of which was issued to the Golden Cycle Co. in consideration for the transfer to it of all the assets acquired by the Golden Cycle Co. from the Fuel Company and certain other assets theretofore owned by the Golden Cycle Co. The value of the foregoing assets on the date of transfer was $1,344,355.28. The Commissioner determined that a profit of $736,438.08 resulted on account of the transfer of assets for stock and an income tax was computed and assessed thereon for 1917, but since the corporations were considered by the Commissioner to be affiliated for excess-profits-tax purposes, the profit was eliminated from income in determining the excess-profits tax of the affiliated group.

The controversy before us arises in determining the consolidated invested capital in 1918 and 1919, where the Golden Cycle Co. and

the Consolidated Fuel Co. are members of an affiliated group, and the question is as to the effect of the aforementioned transaction of January 15, 1917, on invested capital. In contending that the entire value of $1,344,355.28 must be recognized for invested capital purposes, the petitioner says that the corporations who were parties to the transaction were not affiliated when such transaction occurred, and therefore we must look on the transaction as one occurring between nonaffiliated corporations. An examination of the record, however, shows that the deficiency letter which forms the basis of this proceeding included 1917, 1918, and 1919, and that in such letter the Commissioner, in determining a deficiency for 1917, held that the Fuel Company was a member of the affiliated group to January 15, 1917, and that the Consolidated Fuel Co. was likewise a member from the date of its organization. The petitioner elected to file a petition only with respect to 1918 and 1919 and, therefore, 1917 is before us only in so far as it may be necessary for a determination of the deficiencies for 1918 and 1919. In such consideration the determination made by the Commissioner for 1917 and accepted by the petitioner without appeal must be accepted by us, as at least *prima facie* correct. The evidence before us on which the petitioner relies to show that the Golden Cycle Co. and the Consolidated Fuel Co. were not affiliated is the stipulation to the effect that the latter company was engaged " solely in the mining and sale of coal " and that as to the former company " its principal business other than holding all of the capital stock of its subsidiaries consisted in gold ore reduction." It is true, as petitioner points out, that under the 1917 Act two corporations are not to be affiliated merely because one corporation owns or controls substantially all of the stock of the other corporation, but there is a further condition to the same section as follows (sec. 1331, Revenue Act of 1921) :

* * * *Provided,* That such corporations or partnerships were engaged in the same or a closely related business, or one corporation or partnership bought from or sold to another corporation or partnership products or services at prices above or below the current market, thus effecting an artificial distribution of profits, or one corporation or partnership in any way so arranged its financial relationships with another corporation or partnership as to assign to it a disproportionate share of net income or invested capital. * * *

If, therefore, we were to accept the aforementioned descriptions of the business done by each corporation as sufficient to show that they were not engaged in the " same or a closely related business," we should still be without evidence as to the second part of the provision quoted above. In fact, the one bit of evidence we have as to their corporate relationship is a contract under which the Consolidated Fuel Co. would furnish to the Golden Cycle Co. all lignite coal required in the latter's reduction operations. The evidence is insuffi-

cient to show whether this was an arm's-length transaction. In view of the foregoing consideration, we shall proceed on the basis of a transaction which occurred in 1917 (but prior to March 3, 1917) between two corporations which were affiliated for such year.

Had the Golden Cycle Co. retained the assets in question and carried on its business activities without the formation of the Consolidated Fuel Co., certainly there would have been no basis for the increase now sought, and our question is whether the situation is changed by the formation of the latter corporation and the paying in to it of these assets by the former for its entire issue of capital stock, thereby creating an affiliated status for the two corporations. We think not. By the act in question, the group merely acquired a part of its own capital stock and did not thereby create an additional investment in the group—the statutory investment or paying in for invested capital purposes was not affected by the transaction. *H. S. Crocker Co.*, 5 B. T. A. 537; *American Bond & Mortgage Co.*, 15 B. T. A. 264; *Riggs National Bank*, 17 B. T. A. 615; also, cf. *Farmers Deposit National Bank et al.*, 5 B. T. A. 520; *United Drug Co.* v. *Nichols*, 21 Fed. (2d) 160; *W. S. Bogle & Co.* v. *Commissioner*, 26 Fed. (2d) 771; and *Utica Knitting Co.* v. *United States*, 68 Ct. Cls. 77, decided May 6, 1929.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

---

PHILLIPS, concurring: Section 240 of the Revenue Act of 1918 provides that corporations which are affiliated shall make a consolidated return of net income and invested capital. It further provides that in such case the total tax shall be computed in the first instance as a unit. The total tax can be computed as a unit only by computing income and invested capital as a unit for the affiliated group. Section 326 of the Revenue Act of 1918 lays down the procedure to be followed in computing invested capital.

The problem here is to determine the invested capital of this affiliated group. It is my opinion that, in applying section 326, we must look at the unit and include in invested capital (1) the actual cash bona fide paid in to this unit for stock or shares; (2) actual cash value of tangible property, other than cash, bona fide paid in to this unit for stock or shares; (3) paid-in or earned surplus computed on a consolidated basis; (4) intangible property bona fide paid in to the unit for stock, to the extent permitted by the statute. If this be correct, invested capital is not affected by the sale of assets by one group in this unit to another group in the unit, nor is invested capital affected by the purchase by one corporation in the unit of the capital stock of another, except as all or a part of the purchase price

may have gone outside of the unit and serve to reduce invested capital.

The primary purpose of the invested capital provision in the statute is to fix an amount upon which the corporation is to be allowed to earn income before the balance is subjected to tax. Roughly speaking, this amount represents the amount risked in the business, measured by the amount originally invested and accumulated earnings, excluding appreciation in value not realized upon by sale. It is the amount which is so risked upon which income may be earned which will be exempt from excess-profits tax. Where we have a group of corporations and the necessity of computing their invested capital as a unit, we look to see what has been risked and continues to be risked; what has been paid into this group from sources outside the group and not returned to such sources. Transactions within the group, among its members, are to be disregarded, for it is only that which comes into the group from outside sources in payment for its stock or as paid-in or earned surplus that is to be used in measuring invested capital. I am of the opinion that the Commissioner correctly determined invested capital by excluding an appreciation in value of assets which took place while such assets were in the hands of a member of the group and which appreciation represents no new capital put at risk in the business and therefore I concur in the conclusion reached in the prevailing opinion.

TRAMMELL, dissenting: In my opinion the consolidated invested capital should first be computed separately for each corporation and then elimination made for duplications of investment, as we held in the cases of *Grand Rapids Dry Goods Co.*, 12 B. T. A. 696; *Middlesex Ice Co.*, 9 B. T. A. 156; *American Bond & Mortgage Co.*, 15 B. T. A. 264.

Under this theory the new corporation's invested capital would be based on the actual cash value of its assets acquired for stock (sec. 326) and the invested capital of the old company should be determined under section 326 by including the cost of the stock of the new company which is represented by the value of assets exchanged therefor.

When the invested capital of the two companies is added together the value of the assets transferred to the new company would in effect be reflected twice. Then when this duplication, that is, the investment of the old company in the stock of the new, is eliminated, there remains in consolidated invested capital the value of the assets at the time of the transfer to the new company.

Since the transaction arose prior to March 3, 1917, I see no reason why the appreciation in value of assets should not be reflected in

invested capital as the result of the transfer to the new corporation to the same extent as if they had been transferred to a new corporation in a reorganization where only one corporation remained. If only one corporation had remained, clearly the appreciation in value of assets realized as the result of the transfer would be included.

The theory of considering acquisition by a corporation of the stock of another corporation, thereby causing an affiliation of the two, to be acquisition of its own stock, is to my mind clearly erroneous. This fallacy was pointed out by the Circuit Court of Appeals for the Second Circuit in the case of *Remington Rand, Inc.* v. *Commissioner*, 33 Fed. (2d) 77, in which the United States Supreme Court has denied certiorari.