Margaret S. Sawtell, Petitioner, *v.* Commissioner of Internal
Revenue, Respondent.

Docket No. 73023.   Promulgated May 31, 1935.

*Charles M. Rogerson, Esq.*, for the petitioner.
*J. R. Johnston, Esq.*, for the respondent.

### OPINION.

Smith: This proceeding involves a deficiency in petitioner's income
tax for 1930 in the amount of $8,298.22.   The only question in issue
is whether the petitioner is liable in her individual tax return for
1930 for the tax on the profit from the sale in that year of 600 shares
of stock of the Charlestown Gas & Electric Co., which, at the time
of the sale, were held in trust.

The petitioner's husband, Frank N. Sawtell, on March 17, 1930,
transferred to her as a gift a voting trust certificate for 600 shares of
stock of the Charlestown Gas & Electric Co.   At that time, Frank
M. Sawtell was acting as one of five trustees of a trust, hereinafter
referred to as the " voting trust ", created April 4, 1927, for the
purpose of holding and selling the Charlestown Gas & Electric Co.
stock.   Under the provisions of the voting trust agreement, any of
the stockholders could turn in their stock to the trustees or their
nominees and receive trust certificates therefor.   The trustees were
authorized at any time to sell all, but not less than all, of the capital
stock of the company at $175 a share, or at such other price as might
be agreed upon by the trustees and approved by the holders of three
fourths of the voting trust certificates.   Upon the sale of the stock
the voting trust was to terminate.   The Boston Safe Deposit & Trust
Co. was named to act as agent for the trustees in accepting the shares
of stock and issuing stock trust certificates.

At the time the petitioner's husband transferred his voting trust certificate for the 600 shares of stock to the petitioner, negotiations were under way for the sale of the stock then held by the trustees to the Eastern Gas & Fuel Associates. Such an agreement was entered into on April 14, 1930. On April 21, 1930, the trustees notified the holders of the voting trust certificates, including the petitioner, that a sale of the stock to the Eastern Gas & Fuel Associates, to be completed before May 1, 1930, at $175 a share, had been agreed upon and that after that day the proceeds from the sale of the shares represented by the voting trust certificates would be paid to the holders thereof, upon surrender of their certificates to the Boston Safe Deposit & Trust Co. The notice reads in part as follows:

> Eastern Gas and Fuel Associates have agreed to purchase, and we have agreed to sell, all the stock of Charlestown Gas & Electric Company which we now hold as Trustees under the above Declaration of Trust, or which may be deposited with us as such Trustees on or before May 1, 1930, at the price of $175 a share, payable in cash on delivery of the shares on May 1, 1930. The May 1st dividend on the Charlestown stock now held by us is to be received by the registered holders of the stock trust certificates representing the same at the close of business today.

> \*    \*    \*    \*    \*    \*    \*

> If you wish to receive cash for your stock trust certificates, payment will be made at any time after the first day of May upon presentation of your certificates, duly endorsed for cancellation, at the office of the Boston Safe Deposit and Trust Company, Agent. If you desire to exchange your stock trust certificates for Preferred shares of Eastern Gas and Fuel Associates, it will be necessary for you to send your certificates, together with the enclosed letter of transmittal, to the Boston Safe Deposit and Trust Company, Agent, on or before noon of May 1, 1930.

On April 30, 1930, the petitioner, upon the advice of her husband, transferred all of her beneficial interest in the 600 shares of stock of the Charlestown Gas & Electric Co. to the Malden Trust Co., as trustee, under two trust agreements executed April 30, 1930, which created two separate irrevocable trusts of 300 shares each of the Charlestown Gas & Electric Co. stock for the purposes hereinafter stated. These two agreements, which were identical in form, provided, in effect, that the Malden Trust Co. should hold and sell the trust property and pay all of the trust funds to the grantor, the petitioner, on January 1, 1931, but if the grantor should die before that time the trustee should hold the trust property for the benefit of the grantor's daughters, ages eight and six, respectively, using such part of the income as might be needed for their maintenance, education, and support, and distributing the remaining trust funds to them when they were 25 years of age. In the event of the death of the grantor and her daughters before January 1, 1931, the trust property was to be paid to Frank M. Sawtell. The petitioner was

42 years of age and was in good health at the time the trusts were created. The trust agreements were drawn up by the petitioner's husband, who is a lawyer, with the advice of one of the other trustees of the voting trust, who is also a lawyer.

On April 30, 1930, the Malden Trust Co. transferred the voting trust certificate for the 600 shares of the Charlestown Gas & Electric Co. stock which it held under the aforesaid trust agreements to the Boston Safe Deposit & Trust Co., agent for the voting trustees, and received from the Boston Safe Deposit & Trust Co., on May 1, 1930, a check for $105,000 representing the proceeds from the sale thereof.

The respondent has determined that the profit of $66,000, on the sale of the shares in question, which the parties admit to be correct as to amount, is taxable to the petitioner in her individual return for 1930 and not to the trustee in its fiduciary returns. In his deficiency notice the respondent stated that the conveyance by the petitioner of her interest in the 600 shares of stock to the Malden Trust Co. did not represent a genuine trust transaction and that the trust can not be considered as valid for income tax purposes.

The respondent contends that the so-called trusts were invalid and ineffective for the reason that they were testamentary in nature, the donor being the only beneficiary, except in the event of her death, and were void under the laws of the Commonwealth of Massachusetts, which permit a testamentary disposition of property only by duly executed will. In support of this contention the respondent cites *McEvoy* v. *Boston Five Cents Savings Bank*, 201 Mass. 50; 87 N. E. 465. The facts in that case were different from those in the instant case, as is shown by the following quotation from the syllabus:

Where, under a trust created in bank deposits, declarant during her lifetime could at any time revoke it, or could demand and receive from the trustee all the money at any time, and then do with it what she chose, and the other part of the trust related solely to the disposition of the deposits after her death, the only material effect of the instrument is testamentary, as declarant's rights as beneficial owner during her lifetime are not limited in any material way, and it cannot be given effect under the statutes, which permit a testamentary disposition of property only by a duly executed will.

In the instant case the grantor could not at any time revoke the trusts or demand any of the trust funds. More recent cases in which trust conveyances more nearly resembling those under consideration in the instant case have been held valid for certain purposes by the courts of Massachusetts are *Jones* v. *Old Colony Trust Co.*, 251 Mass. 309; 146 N. E. 716; *Roche* v. *Brickley*, 254 Mass. 584; 150 N. E. 866.

The respondent makes the further contentions that the income of the trusts for the year 1930 was income to be distributed currently by the fiduciary to the beneficiary, the petitioner, and is therefore taxable to the petitioner under section 162 (b) of the Revenue Act

of 1928, or that the income, at the discretion of the grantor, was to be distributed, or held for future distribution, to her and is therefore taxable to her under section 167 of that act.

The pertinent provisions of the Revenue Act of 1928 are as follows:

SEC. 161. IMPOSITION OF TAX.

(a) *Application of tax.*—The taxes imposed by this title upon individuals shall apply to the income of estates or of any kind of property held in trust, including—

    (1) Income accumulated in trust for the benefit of unborn or unascertained persons or persons with contingent interests, and income accumulated or held for future distribution under the terms of the will or trust;

    (2) Income which is to be distributed currently by the fiduciary to the beneficiaries, and income collected by a guardian of an infant which is to be held or distributed as the court may direct;

    (3) Income received by estates of deceased persons during the period of administration or settlement of the estate; and

    (4) Income which, in the discretion of the fiduciary, may be either distributed to the beneficiaries or accumulated.

(b) *Computation and payment.*—The tax shall be computed upon the net income of the estate or trust, and shall be paid by the fiduciary, except as provided in section 166 (relating to revocable trusts) and section 167 (relating to income for benefit of the grantor). For return made by beneficiary, see section 143.

SEC. 162. NET INCOME.

\*     \*     \*     \*     \*     \*     \*

(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries, \* \* \* but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not. \* \* \*

\*     \*     \*     \*     \*     \*     \*

SEC. 167. INCOME FOR BENEFIT OF GRANTOR.

Where any part of the income of a trust may, in the discretion of the grantor of the trust, either alone or in conjunction with any person not a beneficiary of the trust, be distributed to the grantor or be held or accumulated for future distribution to him \* \* \* such part of the income of the trust shall be included in computing the net income of the grantor.

The applicability of section 162 (b) to the issue presented depends upon whether the income of the trusts created by the petitioner was "to be distributed currently." This phrase unquestionably refers to continuing trusts whose income is to be distributed to the beneficiaries at periodic intervals. This was the interpretation placed upon it in *Commissioner* v. *Stearns*, 65 Fed. (2d) 371, in which the court said that it understood by the phrase "that the will or deed directs the distribution"; that the phrase "presupposes a periodic duty of the trustee, and possibly in rare cases of an executor; its

typical example is the case of a life tenant." Cf. *People's Pittsburgh Trust Co.* v. *United States*, 6 Fed. Supp. 447. The language of the whole section 161 is directed to continuing trusts and not to ephemeral or short-lived trusts. The question is pertinent as to whether the income of a short-lived trust, for instance, one lasting for one month, is a trust, the income of which is " to be distributed currently." In the circumstances of this case we do not deem it necessary to answer this question. But it would seem there is much ground for holding that the income of a trust which is to be paid over to the beneficiary within a period of less than a year from the date of its creation is one whose income is " to be distributed currently."

In our opinion the question in issue in this case is controlled by section 167. This is identical with section 219 (h) of the Revenue Act of 1924. Its purpose was remedial. The Senate Finance Committee Report on the Internal Revenue Bill of 1924, page 25, contains the following:

Section 219. This section has been rewritten in order to secure clarity and to prevent the evasion of taxes by means of estates and trusts.

\* \* \* \* \* \* \*

(3) Subdivision (h) of this section provides that income of a trust *which may be distributed to the grantor* or which may be used for the payment of premiums of policies of insurance on his life shall be included in the gross income of the grantor. Trusts have been used to evade taxes by means of provisions allowing the distribution of the income to the grantor or its use for his benefit. The purpose of this subdivision of the bill is to stop this evasion. [Italics supplied.]

The intention of Congress in the enactment of this section was to block the machinations of tax attorneys and others to avoid taxes through the device of trusts. The provision should be interpreted broadly " as questions of due process always are, not narrowly or pedantically, in slavery to forms or phrases." *Burnet* v. *Wells*, 289 U. S. 670. It is true that the petitioner, the grantor of the trusts, did not have it in her discretion to have the income of the trust distributed to her within the year 1930, but it is equally true that the trusts were created with the intention that the income should be " held or accumulated for distribution " to her on January 1, 1931, which in fact was done. It will be noted from an inspection of section 167 that the phrases " be distributed to the grantor " and " be held or accumulated for future distribution to him " are connected by the disjunctive " or." It is therefore not necessary that the grantor shall have an election to have the income distributed to her within the taxable year in order for the section to apply. This construction appears to be warranted by the explanation of section 219 (h) of the Revenue Act of 1924, contained in the Senate Finance

Committee Report on the Internal Revenue Bill of 1924, quoted above. We think that the petitioner exercised the required election upon the creation of the two trusts here involved.

In *Frances Marshall Canfield et al., Executors*, 31 B. T. A. 724; we held that where the grantor of a trust had no power to revest in himself title to any part of the corpus of the trust at any time prior to January 3, 1931, on which date the trust terminated, the income of the trust for 1930 was not taxable to the grantor. In that case the income of the trust, pursuant to the indenture of trust, was paid during the calendar year 1930 to the beneficiaries. The respondent had held that the grantor of the trust was taxable upon the income paid over to the beneficiaries. We held otherwise, but that case is distinguishable from the present upon its facts; for here the income was never intended to be paid to anybody but the grantor.

Looking to the motives and purposes of the trusts as shown by the wording of the trust agreements themselves, and the circumstances under which they were created, we are satisfied that the controlling motive of the petitioner and her husband in creating the trusts was to effect the sale of the shares of stock through the trusts in such a manner as to reduce the petitioner's individual income tax liability by eliminating the profits from the sale from her income of 1930. Petitioner is not subject to criticism for attempting to minimize her tax. But it is not to be supposed that in enacting the trust provisions of the statutes Congress intended that they should be availed of by taxpayers merely for the purpose of gaining an advantage in the computation of their tax. The Supreme Court, in *Gregory* v. *Helvering*, 293 U. S. 465, refused to sanction a transaction purporting to be a reorganization and complying literally with the requirements of the statute, section 112 (i) (1) (B) of the Revenue Act of 1928, where—

\* \* \* The whole undertaking, though conducted according to the terms of subdivision (B), was in fact an elaborate and devious form of conveyance masquerading as a corporate reorganization, and nothing else. The rule which excludes from consideration the motive of tax avoidance is not pertinent to the situation, because the transaction upon its face lies outside the plain intent of the statute. To hold otherwise would be to exalt artifice above reality and to deprive the statutory provision in question of all serious purpose.

We think that the same principle should apply in the instant case. In our opinion profits from the sale of the shares of stock in question should be taxed to the petitioner in 1930, the year of the sale.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

ARUNDELL, MATTHEWS, and TURNER concur in the result.

LEECH dissents.