PRESTON R. BASSETT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 63263. Promulgated October 11, 1935.

*Howard M. Bassett, Esq.*, for the petitioner.
*I. Graff, Esq.*, for the respondent.

OPINION.

ARUNDELL: The first question raised in this case is whether the gain derived from the sale in 1929 of the 30 shares of Hall & Connolly stock held in trust by the petitioner for the benefit of his wife constitutes income taxable to the petitioner. The petitioner created an irrevocable trust, naming his wife beneficiary for life, with reversion to himself and his heirs on her death. He named himself trustee and reserved full powers to manage the investment of the trust property. Assuming that a valid trust was created, a point which respondent does not concede and which will be considered hereafter, respondent's cardinal contention is that the trust would be comprehended under section 167, Revenue Act of 1928, the pertinent portion of which reads as follows:

Where any part of the income of a trust may, in the discretion of the grantor of the trust, either alone or in conjunction with any person not a beneficiary of the trust, be distributed to the grantor or be held or accumulated for future distribution to him, * * * such part of the income of the trust shall be included in computing the net income of the grantor.

The respondent urges on us the argument that, since the petitioner and his heirs have a reversion after his wife's death of the whole corpus of the trust, any gain which would constitute income under the Federal taxing statutes and which was not distributable to petitioner's wife would therefore " be held or accumulated for future distribution " to petitioner, within the meaning of the statute. The provision respecting the distribution of income in the trust deed is in very simple terms and merely states that the petitioner has created an irrevocable trust " to pay the net income thereof to my wife, Jeanne M. Bassett, for and during the term of her natural life, and at her death such trust to cease and the principal sum to go to her husband, and his heirs forever." It does not appear therefore in so many words what disposition would be made of capital gain such as that involved here, but, as under the rule applicable in most states any capital gain would be added to the corpus of the trust and only gain derived from the use of the corpus would be distributable to the beneficiary, we may concede so much to the respondent's argument, that the capital gain here in question by being added to the corpus would ultimately return to the petitioner. We may concede also that such capital gain, although under local law not " income " of the trust, would clearly be income under the Fed-

eral statutes. *Merchants Loan & Trust Co.* v. *Smietanka*, 255 U. S. 509; *Charles Kaplan*, 26 B. T. A. 379; affd., 66 Fed. (2d) 401. To make such a capital gain presently taxable to the settlor, however, it must come within the provisions of section 167. That section makes taxable to the settlor only such part of the income of a trust as " may in the discretion of the grantor of the trust * * * be distributed to the grantor or be held or accumulated for future distribution to him * * *." Obviously, the crucial phrase here is " in the discretion of the grantor of the trust."

There is no ambiguity in this phrase. It imports an unfettered command over the income of the trust resident in the settlor, or, if not completely unfettered, hampered only by a control not adverse to the settlor's. It imports a command over the income existing not only at the time of the creation of the trust, for obviously the settlor of a trust has at this time full power to make what disposition he likes of both corpus and income, but a continuing power which may be exerted in the future from time to time after the creation of a trust and as the income on the corpus arises. " Discretion ", as defined by Webster, means " freedom to decide or to act according to one's judgment; unrestrained exercise of choice or will."

Obviously the present trust does not come within this definition, for the settlor had no discretion to withhold income from the beneficiary and accumulate it for future distribution to himself. The fact that capital gains would be added to the corpus and eventually distributed to him, as already pointed out, was not the result of any exercise of his discretion, but came about through the operation of a general rule of law. It is true that the petitioner in his capacity as trustee had the discretion to invest and reinvest the corpus of the trust and thereby to multiply capital gains on such conversions of the corpus, but this power was exercised by him in his capacity as trustee and not as settlor. This was his duty as the trustee. It is the power of the settlor that is aimed at by the statute and the functions of petitioner as settlor and trustee must not be confused. Cf. *Reinecke* v. *Smith*, 289 U. S. 172. But, even if this power of investment be treated as inhering in the petitioner as settlor, we do not think that that fact brings it within the section. Cf. *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339.

We are of the opinion, therefore, that the capital gain realized on conversion of the trust assets was not income to be held or accumulated for future distribution to the settlor by reason of any exercise of discretionary powers on his part, and consequently that no part of it is includable within his gross income.

Respondent relies on *Malcolm W. Greenough*, 29 B. T. A. 315; affd., 74 Fed. (2d) 25; and *Charles Kaplan*, 26 B. T. A. 379; affd., 66 Fed. (2d) 401. Both of these cases are clearly distinguishable.

In the first the settlor made an irrevocable gift on trust for the term of five years, the income to be paid to himself and the corpus to revert to himself, and named himself as one of three trustees (none of whom except the petitioner was a beneficiary), but as the only trustee who might not be removed on motion of the two others. The trustees were given power to " determine in their discretion what receipts shall be deemed income and what principal." In such circumstances we held, and the Circuit Court (First Circuit) affirmed our judgment, that gain realized from the sale of trust assets, although constituting corpus of the trust under local Massachusetts law, was properly taxable as income to the settlor-trustee in the year of its realization by the trust. Obviously the grantor and sole beneficiary of the trust there had complete control and was simply utilizing the trust device to manipulate, as he saw fit, his receipt of income—the kind of situation which section 167 sought to put an end to.

In the *Kaplan* case we had a situation closely analogous to that here. Petitioner made a gift on trust to his wife for life, to himself for life, remainder over to his children, irrevocable without his wife's written consent, and named himself trustee. The trustee was given full powers of management. So far we have stated no incident which is not present in the instant case. But the trustee or trustees were given additional power " to distribute the income arising from the trust property from time to time in such amounts and at such times as they shall think fit, with power to reserve a reasonable portion of the income ", any such accumulated income to be held for the benefit of the particular persons entitled to it. We thought the case came within section 219 (h), Revenue Act of 1924: "It contemplates a trust wherein the grantor retains dominion over the trust income to the extent of diverting it to himself." In other words, petitioner could take income that normally would go to his wife, accumulate it, and then after her death pay it over to himself as the next life tenant. The Circuit Court (First Circuit) affirmed in principle, saying:

Kaplan is under the obligations imposed upon the trustees by the trust instrument. Among these is that he shall exercise his powers as trustee with due regard to the rights and interests of the immediate beneficiary [citations]. The large discretion given to the trustee diminishes these rights, but it does not extinguish them. Applying the law as above stated, the portion of the income properly taxable to Kaplan personally was the entire income minus that portion of it which constituted the irreducible minimum of which the trustee had no right to deprive Mrs. Kaplan. The commissioner held as above stated that the *entire* income was taxable to Kaplan personally. In this he fell into error, as did the Board of Tax Appeals in affirming his decision.  *  *  *

The *Kaplan* case is readily distinguishable on its facts from the instant one, for the petitioner here had no control of the income of the trust at any time, either capital gains or ordinary income.

The recent case of *Margaret S. Sawtell*, 32 B. T. A. 687, was one wherein the petitioner created a trust on April 30, 1930, to terminate at the end of the same year, solely for her own benefit, the income to be paid to her alone and the corpus to revert to her on termination of the trust. At the time the trust was created a sale of the trust assets was pending. We held the capital gain on the sale to be income to the petitioner under section 167 of the Revenue Act of 1928. While we believe that that result was entirely correct on the ground that the trust was not a real one within the intent of the revenue act, but a mere disguise to postpone the realization of income, we are of opinion that the construction given section 167 in that case was too broad and was unnecessary in reaching the decision.

In *Francis J. Stokes*, 28 B. T. A. 1243; affd., 79 Fed. (2d) 256, we held that where the income of a trust was distributable to the grantor's children during their minority and the grantor's wife was given power to withdraw securities or money from the trust, and a similar power was reserved to the grantor but to be exercised by him only on the death of his wife, the grantor retained no powers that would bring him within section 166 or 167 of the 1928 Revenue Act and he was not taxable on the income. The Circuit Court said in affirming: "It is not a question of the power of Congress to provide that under such facts as before the court the income of the trust is taxable to the settlor (*Burnet* v. *Wells*, 289 U. S. 670; *DuPont* v. *Commissioner*, 289 U. S. 685), but it is a question of whether or not Congress has given statutory authority to tax the income derived from the fund to the settlor."

This brings us to respondent's secondary contention in support of the proposition that the present trust falls under section 167. Admitting by implication that the precise words of that section do not cover the present situation, the respondent offers a gloss on the section in the form of the House Report on the corresponding section in the Revenue Act of 1932. The section of the later act reads:

Where any part of the income of the trust *is* or in the discretion of the grantor * * * may be held or accumulated for future distribution to the grantor. [Italics ours.]

Such an amendment of the provision, as Holmes, J., said in *Lewellyn* v. *Frick*, 268 U. S. 238, in respect to a similar amendment to another provision of the statute, " does not help, but if anything hinders the collector's construction of the present law." Such an enlargement of the scope of the provision in the 1932 Act can not be read retrospectively into the 1928 Act.

We must not lose sight of the fact that the trust has been treated as a separate taxable entity since the Revenue Act of 1916. *Merchants Loan & Trust Co.* v. *Smietanka, supra.* And its definition in

the revenue acts as a " taxpayer " has been pursued to its logical conclusion in a long series of decisions. *Baltzell* v. *Mitchell*, 3 Fed. (2d) 428; *Anderson* v. *Wilson*, 289 U. S. 20. This distinction between classes of taxpayers has been rigidly adhered to by the Supreme Court, even in the circumstances of the *Wilson* case, *supra*, where hardship to the beneficiaries, who were " men of flesh and blood ", might have been relieved but for the necessity which the Supreme Court felt imposed by the statute to treat the trust, a mere " abstraction ", as having a separate existence. Such a provision as section 167, therefore, since it obliterates well recognized lines between classes of taxpayers, and seeks to tax to the settlor what is nominally the income of the trust or of the beneficiary, is anomalous, and finds its excuse only in the recognized necessity to prevent evasion. This was, of course, its confessed purpose, cf. House Report 179, 68th Cong., p. 21; Senate Report 298, p. 25; both on section 219(h), Revenue Act of 1924; and, within the words of the section, every effort should be made to effect this purpose, *Burnet* v. *Wells*, *supra;* but we do not think its meaning should be extended by construction beyond the unambiguous import of its words. Consequently, we do not think that the Committee Reports of Congress on section 219(h), Revenue Act of 1924, the prototype of section 167, employing language of wider meaning than the terms of the enactment, may be availed of. *United States* v. *Shreveport Grain & Elevator Co.*, 287 U. S. 77, 83; *Crooks* v. *Harrelson*, 282 U. S. 55, 61.

Respondent's other contentions may be briefly disposed of. He contends that in the circumstances of the sale contemplated at the time the trust was created petitioner made a gift of the proceeds of the stock after sale and not of the stock itself. This contention rests on the assumption that the trust was a mere device to avoid taxation and as such is to be disregarded, for otherwise it is clearly demonstrable that the gift of the stock covered by an executory contract of sale is something essentially different from the gift of the proceeds received on the sale after its consummation, Williston on Sales, § 1, 2. The sale might well have never gone through. In fact, such a possibility was contemplated by the parties and expressly provided for in the contract, for if certain representations of the sellers were not made good by the three months' audit provided, the buyer might withdraw. He might, indeed, withdraw in any case, but if caprice were his only motive, he forfeited the $12,000 which he had put in escrow on signing the contract. Evidently, then what petitioner's wife received on April 12, 1929, was a gift of stock with an interest in the contract of sale, which was agreed upon on the day the trust was created and signed on the next day after.

As for the respondent's contention that the present case falls within the ambit of section 166 on the theory that the petitioner as trustee

had revested in himself during the year the title to the trust property, we need only point out that petitioner's title after the creation of the trust was that of a fiduciary only for the benefit of his wife, an entirely different thing from title held for his own benefit. *Helvering* v. *Duke*, 290 U. S. 591.

Respondent's argument that the trust was not a bona fide one we regard as without substantial merit.

We are of the opinion, therefore, that any gain on the proceeds of the sale of the Hall & Connolly stock held in trust by the petitioner for his wife was not taxable to the petitioner.

The question remains whether the portion of the purchase price of the shareholders distributable to petitioner individually—not what was distributable to him as trustee for his wife, for that question is eliminated by our decision of the first issue—which was held in escrow until 1930 and then paid over to the sellers, was taxable to petitioner in 1929, the year of the sale; or in 1930, the year it was actually paid. Petitioner was on a cash basis.

We think it clear from the provisions of the contract that the $20,000 to be placed in escrow with Chase National Bank as depositary was withheld by the buyers as a guarantee that the warranties and representations were true and would be faithfully carried out. It was obviously impossible to determine precisely the value of cash accounts receivable and physical assets, which were guaranteed to be $60,000, until a reasonable time had been allowed for the payment by the sellers of outstanding liabilities and for the collection of accounts receivable. Therefore, $20,000 was deposited with a common agent, who should hold this amount for both buyers and sellers until the question as to the value of these assets should be clearly resolved. It does not appear from the contract, nor from the facts stipulated, whether the depositary paid interest on $20,000 to the sellers, and we may not infer this fact without evidence.

Generally, as the Supreme Court said in *Lucas* v. *American Code Co.*, 280 U. S. 445, the income tax law is concerned only with realized gains. Moreover, where the petitioner is, as here, on the cash basis, pretty clear evidence of his command over the money held in escrow would have to be present to justify our holding that it was received in the year of execution of the contract, although not paid over until nine months later. Respondent relies on *Federal Development Co.*, 18 B. T. A. 971; and on *Blaine L. Stoner*, 29 B. T. A. 953; since reversed, 79 Fed. (2d) 75. In the *Federal Development Co.* case the petitioner was a vendor of land under lease who had promised the purchaser possession by a certain date, with liquidated damages for every day which the lessee held over, the purchaser withholding $50,000 of the purchase price as a guarantee. Upon this sum the purchaser agreed to pay interest to the vendor at an agreed rate. We

held that the portion of the purchase price so withheld and not paid to the vendor until the following year was income to the petitioner in the year of purchase. The instant case is obviously distinguishable.

What has generally been made decisive of the receipt of income by a taxpayer is whether he may exercise an unlimited command over it, and this holds true although for contractual or other reasons he may eventually have to part with some or all of it later on. In *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417, the Supreme Court held that the taxpayer, whether on the cash or accrual basis, had received income in 1917 to the extent of certain moneys then in litigation between it and the Government, for in that year the District Court had paid these moneys over to the taxpayer, and thereafter the outcome of the litigation on appeal would only be a contingent liability which might or might not be realized.

Here the petitioner had no command over the $20,000 deposited in escrow in July 1929 until it was paid over to him in April of the following year. We think the present case is ruled, therefore, by *Commissioner* v. *Cleveland Trinidad Paving Co.*, 62 Fed. (2d) 85 and *Stoner* v. *Commissioner, supra*. In the former case it was held that the percentage of the payment to be made by a city on a completed paving contract which was retained by the city to guarantee maintenance of the pavement was not taxable to the contractor until the year of its actual receipt. In the latter case, the Circuit Court held that a sum received by the seller of certain stock and under the contract deposited by him on his own behalf and that of the other stockholders in a bank to guarantee against possible liabilities for income tax and other liabilities of the corporation which might not be on its balance sheet at the time the agreement of sale of the stock was carried out, which sum was not withdrawn by the petitioner for his own use until two years later, was taxable to him only in the latter year. The court thought that petitioner never received the fund except as a fiduciary and consequently he could not have realized income on it until his possession of it in that capacity had ceased.

The present case is all the stronger, as petitioner here did not have even a qualified control of the money in escrow, nor, so far as is evident, any benefit from it, until the year 1930.

We hold, therefore, that the share of this $20,000 distributable to the petitioner in his individual capacity for the 25 shares held in his own name which he had sold, in the sum of $11,229.51, should not be included in his gross income for the year 1929.

Reviewed by the Board.

*Decision will be entered under Rule 50.*