HARRY T. ROLLINS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

GLENDORA M. ROLLINS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MARGARET C. ROLLINS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ELLEN F. ROLLINS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

RALPH E. ROLLINS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 63954–63958.    Promulgated April 14, 1936.

*J. G. Gamble, Esq.,* and *J. F. Rosenfield, Esq.,* for the petitioners.
*J. R. Johnston, Esq.,* for the respondent.

OPINION.

SMITH: The respondent contends that the profits on the above described sales of shares of stock of the Rollins Hosiery Mills are taxable to the petitioners individually, and not to the trusts which received the proceeds of the sales.

As pertaining to all of the trusts the respondent makes the broad contention that the trustee, the City Bank Farmers Trust Co., to which all of the shares sold were transferred by the petitioners after the contract of July 19, 1929, was entered into, acted merely as agent for the petitioners in consummating the sale and that the grantors were not relieved of income tax liability on the profits resulting from the transaction.

We do not think that this contention can be sustained. All of the shares of stock sold were conveyed to the trustee before the sale was consummated. There is no question but that the transfers were lawfully made and that the trustee acquired legal title to the shares. In *Preston R. Bassett*, 33 B. T. A. 182, where the respondent made substantially the same contentions as he makes in the instant proceedings and where the facts were similar, we said:

Respondent's other contentions may be briefly disposed of. He contends that in the circumstances of the sale contemplated at the time the trust was created petitioner made a gift of the proceeds of the stock after sale and not of the stock itself. This contention rests on the assumption that the trust was a mere device to avoid taxation and as such is to be disregarded, for otherwise it is clearly demonstrable that the gift of the stock covered by an executory contract of sale is something essentially different from the gift of the proceeds received on the sale after its consummation, *Williston on Sales*, § 1, 2. The sale might well have never gone through. In fact, such a possibility was contemplated by the parties and expressly provided for in the contract, for if certain representations of the sellers were not made good by the three months' audit provided, the buyer might withdraw. He might, indeed, withdraw in any case, but if caprice were his only motive, he forfeited the $12,000 which he had put in escrow on signing the contract. Evidently, then what petitioner's wife received on April 12, 1929, was a gift of stock with an interest in the contract of sale, which was agreed upon on the day the trust was created and signed on the next day after.

See also *Edwin L. Bowen*, 33 B. T. A. 208.

The reservation by the grantors to themselves or their nominees of the right to direct the trustee to sell the stock and to invest the proceeds of the sale in accordance with their wishes did not affect the validity of the trusts. It amounted to no more than a reservation by the grantors of the right to change the form of the trust corpus. Such a right is not adverse to the interests of the trusts or the beneficiaries.

It is evident that one of the motives of the petitioners, and perhaps the principal one, in creating the trusts was to avoid liability for the income tax that would have fallen on them if they had held

the shares of stock until the sale was completed in accordance with the existing agreement. In point of time, the trusts were all created in the short interval between the execution of the agreement of sale, July 19, 1929, and its final consummation, August 10, 1929. All of the trust agreements were carefully worded so as to relieve the petitioners of any individual liability for income tax on the profits from the sale of the stock. All of the group of 26 trusts, as distinguished from the two Proctor trusts, contained the significant provision that:

* * * I shall not have the power at any time during any taxable year within the meaning of the revenue laws of the United States to revest in myself title to any part of the corpus of the trust, except upon written notice delivered to the trustee during the preceding taxable year, or except with the written consent of the beneficiary, other than myself, currently entitled to the distributable income of the trust or of such share thereof as may be affected thereby; * * *

It is well settled, however, that the presence of a motive to avoid tax liability is not of material significance. *United States* v. *Isham*, 17 Wall. 496; *Bullen* v. *State of Wisconsin*, 240 U. S. 625; *Gregory* v. *Helvering*, 293 U. S. 465; *Chisholm* v. *Commissioner*, 79 Fed. (2d) 14.

Since the trusts here were all validly created and since the shares of stock in question were transferred to the trustee to form the corpora of the trusts, the profits on the subsequent sale of the shares constituted income of the trusts taxable either to the trust entities or the beneficiaries, under sections 161 and 162 of the Revenue Act of 1928, or to the grantors of the trusts, under the provisions of sections 166 and 167.

The last mentioned sections provide:

SEC. 166. REVOCABLE TRUSTS.

Where the grantor of a trust has, at any time during the taxable year, either alone or in conjunction with any person not a beneficiary of the trust, the power to revest in himself title to any part of the corpus of the trust, then the income of such part of the trust for such taxable year shall be included in computing the net income of the grantor.

SEC. 167. INCOME FOR BENEFIT OF GRANTOR.

Where any part of the income of a trust may, in the discretion of the grantor of the trust, either alone or in conjunction with any person not a beneficiary of the trust, be distributed to the grantor or be held or accumulated for future distribution to him, * * * such part of the income of the trust shall be included in computing the net income of the grantor.

With respect to the so-called Proctor trusts the respondent makes the contention in his brief, and cites a number of cases which appear to support his contention, that under the two original trust agreements executed by Harry T. Rollins and Ralph E. Rollins, respectively, the wives of the grantors were given a naked power of appointment not coupled with an interest, that such powers were re-

vocable by the husbands, the grantors, and that the husbands were the legal grantors of the benefits conferred in the trusts created by the wives in the exercise of their appointive powers. Assuming the correctness of these contentions, it does not follow that any of the income of the trusts is taxable to the grantors under sections 166 or 167 because of any power in them to revest in themselves title to any part of the corpus of the trusts (section 166) or because any part of such income might in their discretion have been distributed, or accumulated for future distribution, to them (section 167). The revocation of the powers of appointment contained in the original trust agreements would not have revested in the grantors title to any part of the corpus of the trusts, but would have left the trust estates to be administered as the grantors had directed in the original trust agreements. Under the provisions of those agreements the grantors had no power to revest in themselves title to any part of the corpus of the trusts. They reserved the right "to alter, change, or modify any of the administrative provisions of this trust, * * * provided that the beneficial interests established hereunder shall not be affected thereby." Obviously, the revesting in themselves of any part of the corpus of the trusts by the grantors would have affected adversely the beneficial interests of the beneficiaries who otherwise were to receive it. It was specifically provided in the trust agreements that the grantors themselves had no power to revoke the trusts. Such powers were conferred on the grantors' wives exclusively.

The respondent further submits that the provision made in the original trust agreements for the payment of the income per stirpes to the grantors' surviving descendants indicates an intention on the part of the grantors not to dispose of or relinquish control of the income of the trusts during their lives. The most that could be inferred from this provision is that the grantors intended for their wives, in the exercise of their appointive powers, to make necessary provisions for the disposition of the current income of the trusts. This the wives did within a short time, naming themselves as beneficiaries to receive the income of the trusts for life. The original grantors made no reservations either expressed or implied by which they in their own discretion might have revested in themselves title to any of the corpus of the trusts or caused any of the income to be distributed or held for future distribution to them.

It is to be observed, too, that the sale of the shares of stock from which the income in dispute arose did not take place until after the wives had exercised their powers of appointment and caused the shares to be transferred to the new trustee, the City Bank Farmers Trust Co., to be held in the trusts created by them. Under those trust agreements there was no power reserved either to the wives or

their husbands, whichever are considered the legal grantors of the trust, to revest in themselves title to any part of the corpus of the trusts or to have any of the profits from the sale of the shares distributed to any of them during the taxable year. The income of the trusts was all distributable to the wives during their lives, but there was a provision in each trust instrument that the profits from the sale of any part of the corpus were to be added to principal and were therefore not distributable. It is true that what constitutes income of a trust for Federal tax purposes must be determined under the provisions of the Federal taxing statutes and the governing rules of law, *Greenough* v. *Commissioner*, 74 Fed. (2d) 25, but our question here is not what was income to the trusts, but what part of the income of the trusts might be distributed to the petitioners as grantors of the trusts. We are of the opinion that the profits on the sale of the shares of stock held in these trusts, numbered 12,634 and 12,635, are not taxable to any of the petitioners individually.

In each of the other 26 trusts, the income, in the discretion of the trustee, was to be either distributed to the grantor and another beneficiary or accumulated and added to the principal. There was a provision in each trust instrument (see paragraph 8 in trust numbered 12,636 above) that the grantor should have the power at any time after January 1, 1930, to amend or revoke the trust agreement:

* * * in whole or in part, and to change any beneficial interest hereunder; provided, however, that I shall not have the power at any time during any taxable year within the meaning of the revenue laws of the United States to revest in myself title to any part of the corpus of the trust, except upon written notice delivered to the trustee during the preceding taxable year, or except with the written consent of the beneficiary, other than myself, currently entitled to the distributable income of the trust or of such share thereof as may be affected thereby; * * *

In other words, under this provision of the trust instruments the grantors could amend or revoke the trusts and receive all or any part of the principal and income as their own at any time after January 1, 1930, after having given notice of the revocation to the trustee in the preceding year. For instance, such notice might have been given on December 31, 1929, and the trusts revoked on January 2, 1930, the grantors then receiving all of the profits from the sale of the shares of stock in question, which by specific provision in the trust agreements was to be added to the principal.

We think that this amounted to a discretionary power in the grantors to have this income of the trusts held and accumulated for future distribution to them within the meaning of section 167. Upon this point compare *Sawtell* v. *Commissioner*, 82 Fed. (2d) 221, and *Preston R. Bassett*, *supra*. In the latter case the grantor irrevo-

cably conveyed shares of stock to himself as trustee, the income to be paid to his wife for life and the principal on her death to go to himself and his heirs. We held that the grantor had no discretionary power with respect to, and was not taxable on, the profits derived from the sale of the shares after the declaration of trust. In the *Sawtell* case the facts were similar, the trust agreement providing that the income was to be accumulated and distributed to the grantor, if living, on January 1 of the next succeeding taxable year. The court held, reversing the Board in *Margaret S. Sawtell*, 32 B. T. A. 687, and citing with approval *Preston R. Bassett, supra*, that there was no discretionary power in the grantor to have the income of the trust accumulated for future distribution, since the income was to be accumulated at all events. As to the trusts here, the grantors' discretionary power lay in their continuing right to revoke the trusts and thus have the undistributed income and principal distributed to them. There was no such right in the grantors in the *Bassett* and *Sawtell* cases.

It is true that the grantors here could not have amended or revoked the trusts during the taxable year 1929, but section 167, unlike section 166, of the Revenue Act of 1928 does not make this a prerequisite. The language of section 167 is substantially the same as that of section 219 (h) of the Revenue Act of 1924. As stated by the Supreme Court in *Burnet* v. *Wells*, 289 U. S. 670:

The purpose of the law is disclosed by its legislative history, and indeed is clear upon the surface. When the bill which became the Revenue Act of 1924 was introduced in the House of Representatives, the report of the Committee on Ways and Means made an explanatory statement. Referring to section 219 (h) it said: "Trusts have been used to evade taxes by means of provisions allowing the distribution of the income to the grantor or its use for his benefit. The purpose of this subdivision of the bill is to stop this evasion." * * * By the creation of trusts, incomes had been so divided and subdivided as to withdraw from the government the benefit of the graduated taxes and surtaxes applicable to income when concentrated in a single ownership. Like methods of evasion, or, to speak more accurately, of avoidance * * * had been used to diminish the transfer or succession taxes payable at death. One can read in the revisions of the Revenue Acts the record of the government's endeavor to keep pace with the fertility of invention whereby taxpayers had contrived to keep the larger benefits of ownership and be relieved of the attendant burdens. * * * The solidarity of the family is to make it possible for the taxpayer to surrender title to another and to keep dominion for himself, or, if not technical dominion, at least the substance of enjoyment. * * * In these and other cases there has been a progressive endeavor by the Congress and the courts to bring about a correspondence between the legal concept of ownership and the economic realities of enjoyment of fruition. Of a piece with that endeavor is the statute now assailed.

In *Farmers' Loan & Trust Co.* v. *Bowers* (C. C. A., 2d Cir.) 68 Fed. (2d) 916, the court stated: "Statutory provisions intended to

prevent the evasion of the general purposes of the statute ought to be fairly and reasonably construed so as to carry out their purposes."

In *Kaplan* v. *Commissioner* (C. C. A., 1st Cir.), 66 Fed. (2d) 401, it was stated:

* * * We think the statute means that if under any circumstances or contingencies any part of the accumulated income might inure to the benefit of the grantor such portion of the income is taxable to him.

In *Margaret S. Sawtell* v. *Commissioner, supra,* the same court said:

* * * Taken in its ordinary meaning section 167 applies only to trusts in which the grantor has discretion to have the income accumulated for his benefit; it does not include trusts for the direct accumulation of income for the grantor. * * *

We do not see how on any reasonable reading of the language of section 167 it can be held to cover trusts like the present one. No doubt the situation before us is a casus omissus,—the amendment of this section in the Act of 1932 and the committee's reports on the change make that clear,—but we do not think that in a tax statute the court has power to extend it by construction to include such cases unless they come within the language used on reasonable interpretation of it. * * *

The facts in these proceedings are materially different from those which obtained in the *Sawtell* case and we are of the opinion that the rule announced in that case is not applicable here. Here, unquestionably, the grantors of the trusts had a large discretion as to the amount of the income which should be paid out and the persons to whom it should be paid. The profits from the sales of the securities received by the trustee, although declared by the trust instruments to form a part of the capital of the trusts, could, nevertheless, be reached by the grantors in subsequent years. Through their rights to amend or revoke the trusts "in whole or in part, and to change any beneficial interest" the profits from the sales of shares of stock could be brought into the ownership and possession of the grantors. They constituted "income of the trust" within the meaning of section 167 of the Revenue Act of 1928. See *Greenough* v. *Commissioner, supra.*

In our opinion the profits from the sale of the shares of stock held in the 26 trusts numbered 12,636 to 12,661, inclusive, are taxable to the respective grantors of those trusts.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

MURDOCK, MATTHEWS, LEECH, and TURNER dissent.