FEDERAL DEVELOPMENT CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 14283. Promulgated January 31, 1930.

*Robert C. Shelley*, *Esq.*, and *O. Walker Taylor*, *Esq.*, for the petitioner.

*Philip M. Clark*, *Esq.*, for the respondent.

## OPINION.

TRUSSELL: The first assignment of error involves a question of law, the correctness of respondent's action in including in petitioner's income for 1919 the sum of $143,967.25, this being the difference between the cost and the sale price less expenses of sale, of certain real estate sold by petitioner in that year to the Boston Federal Reserve Bank. Petitioner contends that $50,000 of this amount does not represent income for 1919 as it was retained by the purchaser as a guarantee of the seller's obligation to secure the surrender on a certain date of a portion of the premises by a tenant. The facts are not in dispute. The sale was effected in 1919 as a result of a contract by the terms of which petitioner bound itself to deliver title and to secure the vacating of the premises by a certain tenant or to secure harmless the purchaser in case the premises were not vacated as provided. Upon closing the transaction on August 29, 1919, an agreement by the tenant to vacate had not been secured by petitioner but title was accepted by the purchaser and another contract executed which provided, in so far as pertinent to the question at issue, that in place of the unlimited guarantee of the former contract petitioner had deposited with the purchaser $50,000 as a guarantee that the tenant would vacate the premises by March 1 of the following year, petitioner's liability being limited to this amount, and the damage in case the tenant failed to vacate the premises was liquidated by the agreement at $500 per day. By this agreement the purchaser agreed to pay petitioner interest on the deposit and the fact was

witnessed that title had passed and the full amount of the consideration paid the petitioner. The closing of the transaction and making of the payment by the purchaser and the guarantee deposit by petitioner was effected by the purchaser making payment of the purchase price less the amount of the deposit. From that time forward title to the property was in the purchaser and it received the rentals paid by tenants. The premises were vacated by the tenant in question shortly after March 1, 1920, and the purchaser thereupon returned the deposit less the per diem damage agreed upon and plus interest, the net amount paid over being $49,081.44. Petitioner included in income for 1919 on account of this transaction $93,967.25 for 1919, and $49,081.44 for 1920.

Petitioner contends that the $50,000 representing the deposit was not received by it in 1919, and the fact that it would receive any portion of it was not possible to determine in that year; that there was no basis then for its accrual, and consequently it represented income for 1920 when received and then only in the net amount actually paid over.

The fact that in concluding the transaction the Federal Reserve Bank, instead of paying over the entire amount of the purchase price and then receiving back a deposit of $50,000 from petitioner, retained that sum from the total makes no difference. The result is the same in any event. The retaining of this amount was a use of it as funds of the petitioner in carrying out the latter's obligation to make a deposit. The sum was held from that time forward as money belonging to petitioner, interest being paid the latter for the time it was held. The fact that one who sells property guarantees the purchaser against some contingency arising in a future year and makes a deposit as security for the guarantee does not lessen by the amount of the guarantee or the amount of the deposit the profit which he had made on the sale. If in such case the happening guaranteed against takes place in the following year and a portion of the deposit is in consequence lost, the result is one affecting income for that year to the extent of the loss. The action of respondent is approved.

The second assignment of error is upon respondent's disallowance as an expense of 1919 of the sum of $20,000 representing payment of $10,000 each made by petitioner on May 11, 1920, to its president and vice president as extra compensation for services rendered in 1919. The record shows that these two officers of petitioner represented it in 1919 in negotiating and concluding certain transactions which resulted profitably to petitioner. Both individuals were on fixed salaries and petitioner was entitled to their services. There is nothing shown which indicates that any legal obligation arose in

1919 on the part of petitioner to make payment of additional compensation to them over and above the salaries voted. Neither the minutes nor the books of account of petitioner for 1919 record anything which suggests an understanding that additional compensation was legally due or liability therefor admitted in that year. The only minute entry in 1919 in respect to the transaction is a resolution approving action taken for petitioner and authorizing further action for it. No item representing added compensation was accrued on the books prior to the actual voting of such compensation on May 11, 1920. Under the record, as submitted, we can not see that a basis existed for accrual in 1919, of any additional amount on account of these services and no such accrual was made. *Van de Kamps Holland Dutch Bakers*, 2 B. T. A. 1247; *Model Dairy, Inc.*, 13 B. T. A. 545; affd., 36 Fed. (2d) 768. Petitioner's counsel insists in his reply brief that the service rendered was over and beyond those called for from these officers and represented by the regular salaries paid them, and that he can show that fact if permitted to introduce further proof, but even if such condition, if proven, would alter the conclusion reached, we must decide the question on the record as made up on the regular hearing. Counsel can not be permitted to prove his case in piecemeal and supply deficiencies in proof after final submission. The action of respondent is approved.

The third assignment of error is upon the action of respondent in taxing at the 1918 rate under section 301 (c) of the Revenue Act of 1918, $111,150.19 of the income of the affiliated corporations for 1919 and representing payments made to the Kelley-Spear Co. in that year by the United States for work done under its war contracts. The record shows that the income in question was from work done under contracts with the United States executed between April 6, 1917, and November 11, 1918. We see no difference in the fact that the contracts were executed by a predecessor corporation. They were assigned to and responsibility thereunder accepted by this taxpayer. The work under them was done for the United States which made therefor the payments to this taxpayer which represent the income in question. It is not claimed, and the evidence does not indicate, that respondent in determining the net amount subject to tax at 1918 rates, has failed to reduce the gross income of this character by the expense incident to its production, other than in his refusal to allow any amount as a deduction representing the cost of the contracts of construction. The amount of this income should be reduced by the sum of $33,333.34, hereinafter found by us under the sixth assignment of error, as a cost applicable to the contracts, for performance of which the payment in question was made in 1919. *Hoe & Co.* v. *Commissioner of Internal Revenue*,

30 Fed. (2d) 630. Aside from this adjustment, we sustain the action of respondent in applying the 1918 tax rate to this item of income. *Tampa Shipbuilding Co.*, 1 B. T. A. 485; *A. B. Kirschbaum Co.*, 5 B. T. A. 65.

The fourth assignment of error is upon the amortization allowed for 1918 and 1919 in respect to the facilities of the Kelley-Spear Co. acquired or installed for war work, all of that company's assets having been acquired for that purpose. Respondent has allowed $114,895.24 prorated over the period of war production which it is agreed ended on September 16, 1919. Petitioner contends that the correct allowance is $205,147.60 and in support of its position attempts to prove as of September 16, 1919, for purposes of amortization, a salvage value of $31,300. This salvage value is attempted to be shown by a retrospective appraisal made on November 11, 1926, and by the testimony of one of the parties making this appraisal.

Aside from the fact that the appraisal is a retrospective one made after the lapse of seven years and accordingly does not carry the weight of an appraisal of value made upon inspection and consideration at the particular time at which the value is sought to be fixed, we do not think that it, or the testimony given supporting it, establishes the basis for amortization asked by this petitioner. It appears to have been assumed that the basis for amortization is determined by the salvage value, at completion of the Government work, of the various assets constituting the plant, and both the appraisal and the testimony introduced are upon this basis. In this case there was neither abandonment nor salvage of the plant at the close of the Government work. In fact, the record shows the plant in operation as a going concern in private work up until late in 1921. The basis for amortization was the residual values of the land, buildings, and facilities on September 16, 1919, as parts of a shipbuilding plant, not what they were worth as salvage. These assets can not, we think, be considered as having only a salvage value on that date when in use following that time and their residual value is not shown by estimate of their salvage value made by comparison with some other plant which was actually stripped and salvaged.

It is shown, however, that in computing the amortization allowance of $114,895.24 respondent used as the cost of the land and water rights the amount shown on the books of $95,000. It is shown to our satisfaction that this entry was in error. It is apparent that no such amount was considered for payment for this asset by the company in acquisition of the property and the asset has never had a value anywhere near that figure. It is testified that the public ac-

countant, in opening the books, in error, assigned this amount of the total consideration to the land and water rights and the facts proven indicate that such was the case. We have found that the cost of the land and water rights to this taxpayer was $25,000 and that this asset had not lessened in value on September 16, 1919. It was assessed separately for taxation at $30,000 in 1919, and not until 1924 was that valuation reduced to $18,000. Petitioner's main witness on real estate values testifies that the value in 1919 was higher than at any other time.

The opening asset account of this taxpayer should be adjusted in accordance with our finding as to original costs of the various assets, these items should be increased by the cost of additions made, and amortization, with proper adjustment for depreciation sustained, should be recomputed on the various classes of assets other than land and water rights by applying the percentages of lost value as ascertained and used by the respondent.

Under the fifth assignment of error it is contended that the amortization deduction should be charged against the consolidated income of the two affiliated companies and not deducted in the first instance from the income of the Kelley-Spear Co. The question is immaterial as the result in either case would be the same, the entire allowance being realized as a deduction to the extent of consolidated income of the two corporations. Petitioner takes the position that should the amortization allowance exceed the income of the Kelley-Spear Co., such excess, in case the deduction were allowed originally against income of that company, would not reduce the income of petitioner. In this, petitioner is in error as the consolidation of income and deductions would give full effect to such excess in reducing thereby the consolidated income which includes the income of petitioner. In *G. M. Standifer Construction Corporation et al.*, 4 B. T. A. 525, we said:

\* \* \* It must follow that the amortization deduction is a deduction allowable to the affiliated group of corporations in a consolidated return. This means, under the circumstances of this case, that the amortization deduction with respect to the housing facilities erected, constructed or acquired by the Home Company should be allowed as a deduction in determining the net income to be included in the consolidated return, irrespective of whether in arriving at such consolidated net income the deduction is in the first instance applied to or by the Home Company.

The sixth assignment of error raises the issue of the right of the Kelley-Spear Co. to deduct in 1918 and 1919 the cost of certain shipbuilding contracts alleged to have been acquired for $100,000, respondent contending that the payment of this sum was for the good will of the old company whose assets were acquired, and in support of this shows that on the books of the new company good will was

entered at $100,000, but in this connection it is also noted that " Option and Contracts " were entered at $400,000. It is not indicated that the good will of the old company had a value or represented a definite asset sought to be acquired by the new company and included at any figure as a part of the $100,000 cash paid by the new company. The contracts were two in number, one for the construction of a wooden vessel which was then 95 per cent complete and the additional cost and profit subject to accurate estimate. It is testified by this company's officers that the indicated profit, which the new company would and did receive in full, was estimated to be in the neighborhood of $100,000, and in making up the total offered and paid for the assets this contract was included at $50,000 and that the second contract, one for six wooden barges at $190,000 each, represented the consideration for the balance of the $100,000 cash payment. It is testified that the purchase was made upon recommendation of Fuller, the president of the new company and for many years an officer of the general contracting firm of George A. Fuller Co., who estimated the probable profit on the two contracts and recommended that they be included in the offer of purchase at $50,000 each.

We think it has been sufficiently established that the $100,000 in question was paid for these two contracts and represents a proper deduction from the income received therefrom. The contract for construction of one wooden vessel appears to have been completed, and payment therefor to have been received and reported by this taxpayer in the consolidated return for 1918, and we hold that $50,000 of this cost represents a proper deduction for that period. The second contract was for six wooden barges at the same price for each. The contract for four of these barges was canceled by the Government after some work had been done thereon and the taxpayer was paid $112,491.12 for this construction on April 29, 1919, and included this amount in the consolidated income for 1919, and we hold that a ratable portion or two-thirds of the $50,000 cost of this contract for six barges is applicable to these four whose construction was canceled, and accordingly $33,333.34 of this cost represents a proper deduction from this item of income for 1919. In respect to the remaining two barges, the contract was not canceled and we presume they were completed and paid for, but we are not advised as to when this occurred and consequently that portion of the cost of the contract applicable to them is not shown to be a deduction for any one of the taxable years before us.

The seventh assignment of error is upon respondent's action in computing the excess and war-profits taxes of the affiliated companies for the period October 18 to December 31, 1918, instead of

on a full calendar year basis. It appears that affiliation of these corporations began on October 18, 1918, and that they were both organized in that month and began business on that date. Accordingly, it is only for the period from that date to the close of that year that a 1918 consolidated return could be filed as their accounting period was closed at the end of the calendar year.

The pertinent portions of the Revenue Act of 1918 provide:

SEC. 312. That the excess profits credit shall consist of a specific exemption of $3,000 plus an amount equal to 8 per centum of the invested capital for the taxable year.

SEC. 305. That if a tax is computed under this title for a period of less than twelve months, the specific exemption of $3,000, wherever referred to in this title, shall be reduced to an amount which is the same proportion of $3,000, as the number of months in the period is of twelve months.

SEC. 326. (d) The invested capital for any period shall be the average invested capital for such period, but in the case of a corporation making a return for a fractional part of a year, it shall (except for the purpose of paragraph (2) of subdivision (a) of section 311) be the same fractional part of such average invested capital.

Respondent was not in error in computing consolidated net income on the basis of the period October 18 to December 31, 1918, for which the return in question was filed, and in prorating invested capital and corporate exemption on such basis he complied with the specific provisions of the taxing act.

The eighth assignment of error is disposed of by the stipulation filed that petitioner's deductible expenses for the year 1921 were in the sum of $10,581.24.

*Judgment will be entered pursuant to Rule 50.*