COLUMBUS BRICK & TILE COMPANY AND GAMBLE & STOCKTON COMPANY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 42707. Promulgated August 15, 1932.

*H. A. Mihills, C. P. A.*, for the petitioners.
*T. M. Mather, Esq.*, for the respondent.

OPINION.

MATTHEWS: The respondent has not determined a deficiency against the Gamble & Stockton Company for 1920, and the proceeding, in so far as it purports to be on behalf of that company, is, therefore, dismissed.

The first issue involves the computation of invested capital.

Petitioner contends that it is entitled to include in invested capital $210,000 as the value of the Shepherd plant paid in for stock in that amount, and $90,000 as the value of the notes of Gamble, Stockton, and Dixon paid in for stock in the same amount.

The respondent, in his deficiency notice, does not give any reason for the exclusion of the value of plant and the value of the notes from invested capital, but counsel for respondent in his brief argues that aside from the $51,000 paid by Stockton and Gamble for the Dennison stock, which they turned in to the Columbus Brick & Tile Company for stock, the rest of the transaction was merely a paper one, with the result that the Gamble & Stockton Company owned stock of the Columbus Company in exchange for assets, and, since the two corporations were affiliated, this amounted to a purchase of its own capital stock, resulting in no change in invested capital.

We can not agree with respondent's view of the transaction.

Subdivision (a) of section 240 of the Revenue Act of 1918 requires corporations which are affiliated to make a consolidated return of net income and invested capital for income-tax and excess-profits-tax purposes. Subdivision (b) of that section provides that:

> For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all the stock of the other or others, or (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests.

All the stock of the Gamble & Stockton Company and of the Columbus Brick and Tile Company was owned by the same persons in 1920, and both corporations were controlled by the individuals, Telfair Stockton and Robert Gamble, who owned in equal amounts substantially all the stock. The corporations were affiliated, therefore, within the meaning of the second class of affiliations enumerated in section 240 (b). The question to be decided is the correct amount of the consolidated invested capital.

In *American Bond & Mortgage Co.*, 15 B. T. A. 264, we said:

> We have repeatedly held that consolidated invested capital should be determined by computing separately the statutory invested capital of each corporation, as defined by section 326, and then eliminating from the combined statutory invested capital of the affiliated group, so determined, the amount of any duplications which may appear. * * *

> In *Middlesex Ice Co. et al.*, 9 B. T. A. 156, we had before us a question involving the determination of consolidated invested capital, and in the course of our opinion, we said:

> "Each member of the affiliated group enters the consolidation with its invested capital as defined by section 326 of the Revenue Acts of 1918 and 1921. From this preliminary exhibit there is then eliminated such items or amounts as are shown to be duplications either of investment or of earned surplus and un-

divided profits. The law does not specifically provide for, and we are unable to find, that it in any sense contemplates any reduction or elimination of actual assets not appearing as duplications."

Section 326 provides as follows:

SEC. 326. (a) That as used in this title the term " invested capital " for any year means (except as provided in subdivisions (b) and (c) of this section):

(1) Actual cash bona fide paid in for stock or shares;

(2) Actual cash value of tangible property, other than cash, bona fide paid in for stock or shares, at the time of such payment, but in no case to exceed the par value of the original stock or shares specifically issued therefor, * * *

      *       *       *       *       *       *       *

(c) There shall be deducted from invested capital as above defined a percentage thereof equal to the percentage which the amount of inadmissible assets is of the amount of admissible and inadmissible assets held during the taxable year.

In computing the invested capital of the Columbus Company under section 326, *supra*, we must determine how much can be included on account of the notes and the plant paid in for stock. Petitioner admits that the Dennison stock can only be included at $51,000 under the provisions of section 331. We have found, upon a consideration of the evidence, that the notes were worth their face value at the time paid in and that they were bona fide paid in. The makers were responsible and solvent, and bankers with whom the individuals and corporations did business and obtained credit testified that the notes were worth face value. Interest was paid on the notes when due. They should be included in invested capital at their face value. *Harding Glass Co.*, 15 B. T. A. 621.

There is no doubt that the plant was worth at least $210,000 when paid in for capital stock. This was the amount paid for it by the prior owners and by the Gamble & Stockton Company in an arm's length transaction only a few months before, and the evidence substantiates such a valuation. It should be included in invested capital at $210,000.

Thus, by following the method outlined in the case of *American Bond & Mortgage Co.*, *supra*, and computing separately the invested capital of these two corporations, we find that the Columbus Company has an invested capital of $351,000, before adjustment for inadmissibles, computed under the provisions of section 326. This amount is arrived at as follows:

Stock of the Dennison Company paid in for stock_____ $51, 000
Plant of Shepherd Bros. paid in for stock_____ 210, 000
Notes of Gamble, Stockton and Dixon paid in for stock_____ 90, 000

The respondent has allowed the Gamble & Stockton Company an invested capital of $200,000, representing the par value of its capital stock. This would make a consolidated invested capital of $551,000, before necessary adjustments in which there are no duplications.

The fact, as shown by the evidence, that in 1921 the notes for $90,000 were paid to a large extent in stock of the Gamble & Stockton Company and the note for $210,000 held by the Gamble & Stockton Company was paid in stock of the Columbus Company, can not affect invested capital for 1920. The year 1921 is not before us and, therefore, we do not have to determine the effect on invested capital of such payments. Neither does the fact that in 1922 the Columbus Company paid out of its earnings the note for $110,000 given by the Gamble & Stockton Company to the Shepherd Brothers Company and in 1923 received stock of Gamble & Stockton Company, affect invested capital for 1920.

The invested capital of the Columbus Company should be averaged from the date of issue of its stock. At the hearing the respondent moved to amend his answer to conform to the proof in that the evidence showed that the stock of the Columbus Company was not issued until March 2, 1920, which would require that invested capital of the Columbus Company be averaged from the date of issue. See section 326 (d) of the Revenue Act of 1918; *Federal Development Co.*, 18 B. T. A. 971.

The second assignment of error relates to the disallowance by the respondent of the cost, less salvage, of a Boss burner and steam drier equipment which were discarded in the early part of 1920 as obsolete in order that more up-to-date systems might be installed. At the time the plant was conveyed to the Columbus Company the process of replacing these two systems was in progress, though not completed until April and August of that year, respectively. The respondent disallowed the deduction upon the ground that it was definitely known not later than January that these systems would be discarded, and increased the depreciation claimed by the amount of $1,696.75, representing 5 per cent of the $33,935.05 disallowed. The deficiency on this point is based on the report of the revenue agent, in which the following explanation of this disallowance appears:

* * * The purchase was at a lump sum price for the brick yard as a whole, and in disallowing the deduction of $33,935.05, it of course restores that amount to the total purchase price to be allotted to such parts of the plant as did possess a value at the time of acquisition; that is, the plant as a whole was worth as much without the useless burning and drying systems (less the salvage) as it was with such useless and valueless systems.

It has been held both by the courts and by this Board that where a taxpayer purchases real estate and a building and intends at the time of such purchase to tear down a part of the building to make alterations thereon, the cost of such demolition and of the property destroyed is not deductible as a loss, but constitutes a part of the purchase price. See *Liberty Baking Co.* v. *Heiner*, 34 Fed. (2d) 513; *Union Bed & Spring Co.* v. *Commissioner*, 39 Fed. (2d) 383; and

*Milwaukee Woven Wire Works*, 16 B. T. A. 75. In *Union Bed & Spring Co., supra*, the court said: " If he [the taxpayer] intends at the time of purchase, to demolish and rebuild, then the cost of so doing must be considered as part of his capital investment."

It seems to us that the instant case presents a somewhat similar situation. The corporation paid the $210,000 for the plant and clay lands, knowing that the Boss burner and steam drying plant were obsolete and were at that time in the process of being dismantled. The petitioner contends that the property was operated for the Columbus Company and in the name of the Columbus Company from the first of January, and that, since it was not until later that these two systems were scrapped, the corporation is entitled to the claimed deduction. We see no merit in this contention. Although the charter for the Columbus Company had been granted, the property in question was not conveyed to it until March 2, at which time these systems were being dismantled. We are, therefore, of the opinion that the respondent was correct in assuming that the corporation expended the total purchase price for the property as a whole, without the Boss burner and steam drying equipment. The Columbus Company is, accordingly, not entitled to any deduction for obsolescence of these two systems.

*Further proceedings may be had under Rule 62 (b) and (c).*

*H. A. Mihills, C. P. A.*, for the petitioner.
*T. M. Mather, Esq.*, for the respondent.