LYNCHBURG NATIONAL BANK & TRUST CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 35279. Promulgated June 25, 1953.

*Robert J. Heberle, Esq.*, for the petitioner.
*Reuben G. Clark, Jr., Esq.*, for the respondent.

**OPINION.**

HILL, *Judge:* The petitioner argues that it expended the insurance proceeds here in question in the acquisition of other "property similar or related in service or use to the property" destroyed by fire and is, therefore, entitled to the benefits of section 112 (f) of the Code[1] as

---

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS.

(f) INVOLUNTARY CONVERSIONS.—If property (as a result of its destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation, or the threat or imminence thereof) is compulsorily or involuntarily converted into property similar or related in service or use to the property so converted, or into money which is forthwith in good faith, under regulations prescribed by the Commissioner with the ap-

it existed prior to its amendment by the Revenue Act of 1951. This argument is based upon the following facts: The property destroyed by fire was acquired by the petitioner for the purpose of building an addition to its bank. In 1950 the addition to the bank was completed. Both the addition and the preexisting rental property were business properties that occupied the same land and had the same frontage and depth. The petitioner received rental income from stores in the old building and from safe deposit boxes in the new building. Thus, reasons the petitioner, the bank addition was clearly related in service or use to the rental stores destroyed by fire.

In support of its argument the petitioner cites the case of *Massillon-Cleveland-Akron Sign Co.*, 15 T. C. 79, 83, where we said:

Section 112 (f) is a relief provision, which takes cognizance of the inequity of taxing a gain resulting from the involuntary conversion of property where the proceeds are used to replace the property, and should be liberally construed to effectuate its purpose. *Washington Railway & Electric Co.*, 40 B. T. A. 1249; *Davis Regulator Co.*, 36 B. T. A. 437; *Washington Market Co.*, 25 B. T. A. 576. * * *

However, this does not aid the petitioner here for if Congress had intended to apply the benefits of section 112 (f) to all cases of involuntary conversions the restrictive language "similar or related in service or use to the property so converted" would have been unnecessary. A mere showing that both the old property and the new are general business properties is insufficient. Nowhere have the courts so far extended the meaning of "similar or related in service or use" as to be of benefit to the petitioner. Functionally the new building was not similar to or related in use to the old building. Therefore, we must sustain the position of the respondent.

The second issue grows out of the respondent's disallowance of a claimed deduction for depreciation with respect to the old building for the year 1946. The respondent based his determination upon the fact that the old building was acquired with the intent of demolishing it for the purpose of erecting a bank addition and upon the provisions of section 29.23 (e)–2 of Regulations 111, which deny a loss upon demolition in such circumstances.

Where, as here, there is a purchase of land with the intent to demolish a building situated thereon and erect a new one, no part of the price paid is allocable to the building, since it is deemed that

proval of the Secretary, expended in the acquisition of other property similar or related in service or use to the property so converted, or in the acquisition of control of a corporation owning such other property, or in the establishment of a replacement fund, no gain shall be recognized, but loss shall be recognized. If any part of the money is not so expended, the gain, if any, shall be recognized to the extent of the money which is not so expended (regardless of whether such money is received in one or more taxable years and regardless of whether or not the money which is not so expended constitutes gain).

the building has no value to the purchaser and it is the land which is purchased and which alone has value. The entire purchase price, therefore, represents the cost of the land and becomes the purchaser's basis. *N. W. Ayer & Son, Inc.*, 17 T. C. 631. The fact that a certain value was placed on the building at the time of purchase, that the buildings were rented and rent collected, and depreciation claimed is deemed immaterial. The original intention is the determining factor. *Providence Journal Co.* v. *Broderick*, 104 F. 2d 614. Therefore, the old building had a basis of zero to the petitioner. No value subject to depreciation existed for tax purposes. For these reasons we sustain the respondent with respect to this issue. The fact that the basis of the underlying land will some day have to be adjusted for the depreciation already allowed with respect to the old building is here immaterial.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

Murdock, *J.*, dissenting: A property improved with a 3-story brick building was occupied by rent-paying tenants who desired to continue their leases. The petitioner purchased the property because it desired to construct on the land, which was adjacent to its bank building, a building more suitable to its own uses. It paid $37,500 for the property, allocating $5,225.25 as the cost of the building. Had it demolished the building and built another in its place the entire cost of the property would have been recognized as the cost of the land. However, it found that it could not rebuild, so it changed its plans, at least temporarily, and continued to lease the building to the then tenants. Thus the building actually had value and produced income. The petitioner should be allowed to recover through depreciation some amount representing the cost of the building to it.

Later, a fire partially destroyed the building and the insurance proceeds were placed in a replacement fund and eventually used to pay a part of the cost of a bank building constructed on the land. The new building, although different in some respects from the old one, was, nevertheless, similar or related in service or use to the old one within the meaning of section 112 (f), since both were commercial buildings making business uses of land on Main Street in Lynchburg. The difference in service and use is not sufficient to preclude the application of section 112 (f), a relief provision. *Washington Market Co.*, 25 B. T. A. 576; *Washington Railway & Electric Co.*, 40 B. T. A. 1249; *Massillon-Cleveland-Akron Sign Co.*, 15 T. C. 79.

Arundell and Withey, *JJ.*, agree with this dissent.