423 F.2d 862
 Arthur R. IVEY and Karen L. Ivey, Robert C. Barnum, Jr., and Marion M. Barnum, Edwin J. O'Mara, Jr., and Helen E. O'Mara, Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Appellee.
 No. 583.
 Docket 33848.
 United States Court of Appeals, Second Circuit.
 Argued March 12, 1970.
 Decided April 1, 1970.
 
 Tobias Weiss, Stamford, Conn., for appellants.
 Gary R. Allen, Dept. of Justice, Washington, D. C. (Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Elmer J. Kelsey, Washington, D. C., on the brief), for appellee.
 Before SMITH, KAUFMAN and HAYS, Circuit Judges.
 IRVING R. KAUFMAN, Circuit Judge:
 
 
 1
 Appellants Arthur R. Ivey, Robert C. Barnum, and Edwin J. O'Mara and their wives appeal from a decision of the Tax Court permitting the Commissioner of Internal Revenue to assess deficiencies against each of the taxpayers for the year 1963. This appeal raises a single question: is property distributed pursuant to a section 333[1] tax-free corporate dissolution considered as a "purchase" for the purpose of Treasury Regulation 1.165-3(a), which disallows loss deductions for buildings purchased with the intent to demolish them?[2]
 
 
 2
 The facts are fully set forth in the opinion of Judge Mulroney for the Tax Court,[3] and need be recounted only briefly. Taxpayers and one Nickerson,[4] all law partners, in 1959 formed the Greenwich Title Company, Inc., to purchase the land and the building at 170-172 Mason Street, Greenwich, Connecticut. They bought the building in 1959, and operated it through 1963 as a source of rental income. Beginning as early as 1960, however, plans were developed for construction of a new building on the 170-172 Mason Street plot and on adjoining plots owned by the taxpayers. In 1961 an architect prepared plans for a new building to replace 170-172 Mason Street; but before the demolition, taxpayers in 1963 dissolved the Greenwich Title Company, Inc., in a liquidation that satisfied section 333 of the Internal Revenue Code of 1954, and distributed its assets — principally 170-172 Mason Street — to the four partners.
 
 
 3
 The value of the building at the time of demolition was stipulated to be $31,617.73; each partner included one-fourth the loss ($7,904.43) in computing his distributable partnership loss for 1963. The Commissioner's contention, succinctly stated, is that by receiving the distributed assets of the Greenwich Title Corporation in 1963 taxpayers "purchased" or "acquired" them for the purpose of Treas.Reg. § 1.165-3(a). Since the taxpayers had clearly formed the intent to demolish the building by 1963, if the Commissioner is correct in treating the section 333 distribution of that date as a purchase, then he would also be correct in assessing the deficiency.
 
 
 4
 Taxpayers respond that they did not "purchase" the building in 1963; they acquired it in a tax-free distribution which permits them to receive property without recognition of loss. They further contend that to deprive them of the opportunity to claim the demolition loss would contravene section 333, since it would impose an additional burden on a distribution pursuant to a liquidation the section was designed to encourage.[5] In addition, they claim that since the holding period under section 333 for the purpose of determining gain or loss is the same for these taxpayers as it was for the corporation, it would be anomalous to give them loss recognition treatment different from that the corporation would have received.
 
 
 5
 While the question is not without difficulty, we agree with the Tax Court that the Commissioner's position is on sounder ground. The regulations promulgated under the 1939 Code, Treas. Reg. 118, § 39.23(e)-2 declared the policy that when "a taxpayer buys * * * a building, which he proceeds to raze with a view to erecting thereon another building, it will be considered that the taxpayer has sustained no deductible loss * * * the value of the real estate * * being presumably equal to the purchase price of the land * * *." The rationale is that if the taxpayer buys the land intending to demolish the building, the building can have no value to him, and its demolition occasions no loss. The determining factor is his intent at the time of purchase. See Int.Rev.Code of 1954, Treas.Reg. § 1.165-3(a); Lynchburg National Bank & Trust Co., 20 T.C. 670, affirmed 208 F.2d 757 (4th Cir. 1953). Here the individual taxpayers acquired 170-172 Mason Street in 1963, in exchange for their cancelled shares of Greenwich stock. In fact, the basis they acquired was not that of the corporation, as they seem to argue, but their basis in the cancelled shares at the time of the exchange. See Int.Rev.Code of 1954, § 334(c). The basis and holding period of the corporation in the distributed property is not carried over; rather the new owner's basis and holding period in his stock are "substituted" for the corporation's basis and holding period in the property.[6] Hence we regard the distribution as equivalent to a purchase under Treas.Reg. § 1.165-3(a). Since we agree with the Tax Court that at the time of this transaction in 1963 the taxpayers had formed the intent to demolish 170-172 Mason Street, the Tax Court properly sustained the Commissioner's disallowance of the deductions and assessment of deficiencies.
 
 
 6
 The judgment of the Tax Court is affirmed.
 
 
 
 Notes:
 
 
 [1]
 § 333Election as to recognition of gain in certain liquidations
 (a) General Rule. — In the case of property distributed in complete liquidation of a domestic corporation (other than a collapsible corporation to which section 341 (a) applies), if —
 (1) the liquidation is made in pursuance of a plan of liquidation adopted on or after June 22, 1954, and
 (2) the distribution is in complete cancellation or redemption of all the stock, and the transfer of all the property under the liquidation occurs within some one calendar month, then in the case of each qualified electing shareholder (as defined in subsection (c)) gain on the shares owned by him at the time of the adoption of the plan of liquidation shall be recognized only to the extent provided in subsections (e) and (f).
 
 
 [2]
 Treas.Reg. § 1.165-3Demolition of buildings.
 (a) Intent to demolish formed at time of purchase. (1) Except as provided in subparagraph (2) of this paragraph, the following rule shall apply when, in the course of a trade or business or in a transaction entered into for profit, real property is purchased with the intention of demolishing either immediately or subsequently the building situated thereon: No deduction shall be allowed under section 165(a) on account of the demolition of the old buildings even though any demolition originally planned is subsequently deferred or abandoned. The entire basis of the property so purchased shall, notwithstanding the provisions of § 1.167(a)-5, be allocated to the land only. Such basis shall be increased by the net cost of demolition or decreased by the net proceeds from demolition.
 
 
 [3]
 Arthur R. Ivey, ¶ 52.15 P-H Tax Ct.Rep. & Mem.Dec. (Mar. 16, 1969)
 
 
 [4]
 Nickerson's return is not involved in this appeal
 
 
 [5]
 Actually, since Greenwich Title Company, Inc., reported a net operating loss, the demolition loss deduction was of no value to it, so that at least in this case the taxpayers can hardly claim that they forfeited any tax benefit
 
 
 [6]
 The taxpayers cite N. W. Ayer & Co., Inc. v. C.I.R., 17 T.C. 631 (1951) for the proposition that the intent at the time of the original purchase carries over to the subsequent taxpayers after a tax-free distribution of assets. InAyer, however, there was a corporate reorganization, in which a partnership business was incorporated, and partnership assets transferred to the corporation so that the partnership's basis in the assets was carried over to the corporation. In a section 333 distribution, however, the basis of the dissolved corporation is not carried over, but rather the basis of the transferee in his stock is substituted for the corporation's basis in the assets. Ayer, indeed, supports the distinction between substituted and carry-over bases.