FRANK H. ARGO and BEVERLY J. ARGO, GENE C. CLARK and DORRIS L. CLARK, THOMAS D. ELEFANTE and SHIELA A. ELEFANTE, RONALD W. VICKERY and PATRICIA M. VICKERY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Argo v. Commissioner
Docket No. 10685-80
United States Tax Court
T.C. Memo 1982-732; 1982 Tax Ct. Memo LEXIS 12; 45 T.C.M. (CCH) 385; T.C.M. (RIA) 82732; December 23, 1982. John L. Burghardt, for the petitioners. Daniel Ramthun, for the respondent. WILBUR
MEMORANDUM OPINION WILBUR, Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes: Petitioners
Taxable Year
Deficiency
Frank H. Argo and
1976
$1,208
Beverly J. Argo
1977
2,893
Gene C. Clark and
1976
920
Dorris L. Clark
1977
1,393
Thomas D. Elefante and
1976
854
Shiela A. Elefante
1977
1,376
Ronald W. Vickery and
1976
790
Patricia M. Vickery
1977
1,995
The sole question presented is whether a partnership acquired any basis in an irrigation system purchased together with a larger parcel of land with the intent of demolishing the system shortly thereafter and replacing it with another mode of irrigating the land. All of the facts have been stipulated. The stipulation of facts and the attached exhibits are incorporated herein by this reference. A *14 brief summary of the salient facts follows. Petitioners Frank H. Argo and Beverly J. Argo resided in Princeton, California, at the time they filed their petition in this case. The Argos filed timely joint Federal income tax returns for the taxable years 1976 and 1977 with the Internal Revenue Service Center in Fresno, California. Petitioners Gene C. Clark and Dorris L. Clark resided in Princeton, California, at the time they filed their petition in this case. The Clarks filed timely joint Federal income tax returns for the taxable years 1976 and 1977 with the Internal Revenue Service Center in Fresno, California. Petitioners Thomas D. Elefante and Shiela A. Elefante resided in Butte City, California at the time they filed their petition in this case. The Elefantes filed timely joint Federal income tax returns for the taxable years 1976 and 1977 with the Internal Revenue Service Center in Fresno, California. Petitioners Ronald W. Vickery and Patricia M. Vickery resided in Willows, California, at the time their petition in this case was filed. The Vickerys filed timely joint Federal income tax returns for the taxable years 1976 and 1977 with the Internal Revenue Service *15 Center in Fresno, California. Petitioners are all members of a partnership doing business as El Clarvi Rancho. This partnership was formed in July 1976 for the purpose of purchasing and farming a 640 acre parcel of land located near Willows, California. The 640 acre parcel was purchased in August 1976 for a total purchase price of $465,000 plus $89,972 in commissions and expenses paid by the purchasers. On the date of acquisition, there were two parcels of irrigated property on the northern half of the land, one being 126 acres and the other being 66.5 acres. The remaining acreage was cultivated for dry-land grain crops. At the time of purchase, a concrete pipe irrigation system was located on the northern end of the property. This irrigation system was used to convey water from wells to the alfalfa field and consisted of approximately 5,745 feet of 15-inch concrete pipe, 2 stand pipes, and 357 alfalfa valve assemblies.The value of the concrete pipe irrigation system on the date of acquisition was $42,072. The intent of the partnership with regard to the land and the concrete pipe irrigation system, as of the date of acquisition, was to level the entire 640 acre parcel of *16 property to what is known in the farming business as hydraulic grade in order to make the land fully productive by allowing irrigation of the whole parcel through a method called flood irrigation. This is accomplished by grading and filling the land to arrive at an almost perfectly level surface, then constructing a system of levees to fully enclose the land around its perimeter. Water is subsequently pumped onto the land, and the level surface and retaining levees hold the water, allowing the land to gain the maximum benefit from the irrigation with minimal loss of moisture. The plan was to retain the existing crop and plant the remaining northern half of the parcel in grain crops for the then current growing season, which would have extended through the remainder of 1976 and into the spring of 1977.In the meantime, the leveling program would be started on the southern half of the parcel and progress as weather conditions permitted. It was anticipated that the leveling of the southern portion of the property would not be completed until after the end of the 1976 calendar year since the rainy season, which normally occurs in the fall and winter, would prevent the heavy earthmoving *17 equipment from perfrmoing its work in the soft, wet soil. After work on the southern portion of the property was completed, the leveling program was to be extended to the northern portion of the parcel the following year as weather conditions and the currently growing crops permitted. At some point, the portion of the property containing the irrigation system would be leveled as a part of the overall program. This would also entail the destruction of the existing concrete pipe irrigation system located on that acreage. The leveling of the full 640 acre parcel was expected to be completed within 2 years of the date of acquisition with the northern portion containing the irrigation system being leveled last. The acquisition and the development of the subject property was financed by the Federal Land Bank of Berkeley, California. The loan provided $388,031 for acquisition purposes, and $125,000 for the leveling program. The $125,000 was to be held in trust by the Federal Land Bank Association of Willows, California, with portions of this amount to be released periodically by the Association manager as the leveling progressed to his satisfaction.The financing of the leveling *18 program had an outside time limit of 2 years. The leveling program was started on the southern portion of the property in August 1976. The concrete pipe irrigation system was used to continue irrigating the existing crop, which was eventually harvested that fall along with the grain crop planted on the remaining acreage of the northern portion of the parcel. Following the alfalfa harvest, the irrigation system was used to pre-irrigate the soil of that acreage in anticipation of the planting of the spring 1977 crop. In 1976 and 1977, the subject area (along with most of northern California) unexpectedly experienced abnormally dry conditions. These conditions allowed the partnership to continue the leveling program into a part of the year in which it normally could not be done, contrary to original plans. As the drought progressed into November, the leveling of the southern portion of the property was completed, and the partners decided to alter their original plans and level the northern portion, including the irrigated acreage, as well. The additional work was begun, and in the process of leveling the northern portion the concrete pipe irrigation system was destroyed. The *19 leveling of the entire 640 acre parcel was completed before the end of December 1976.
The annual rate of return on an investment in an irrigation system such as the subject system is 15.5 percent. At the time of acquisition of the property, it was anticipated that he irrigation system would remain in use for 2 years before it was demolished. Applying an annual rate of 15.5 percent, the present value of the expected return over a 2-year period from the irrigation system is $11,242. The cost of renting an above-ground irrigation system to yield equivalent irrigation to the 193 acres would have been $13,167 and $13,626 for the years 1976 and 1977, respectively. This irrigation system would have been a 12-inch aluminum pipe portable system requiring the use of two pipelines on the 127 acre section to yield equivalent results. The land without irrigation would have rented for $10 per acre in 1976. The land with irrigation would have rented for $90 per acre per year in 1976. This difference in rental value is because dry land is suitable for low-income crops, whereas irrigated land is suitable for high-income crops. The difference of $80 in a rental value times 193 acres equals *20 $15,440 per year.
The El Clarvi Rancho partnership, which utilizes the cash basis of accounting, claimed deductions for depreciation of the irrigation system in the amounts of $8,765 for 1976 and $21,036 for 1977. Since the partnership intended to demolish the irrigation system, respondent disallowed the depreciation expense on the ground that the cost or other basis of the system had not been established. Accordingly, in his deficiency notices respondent increased the taxable income of each set of petitioners for each of the years 1976 and 1977 by their respective 25 percent shares of the deduction disallowed for each year. Under section 167(a)(1), [1] a taxpayer is allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear of property used in the trade or business. Under the straight line method of depreciation, the method used by El Clarvi Rancho to compute its depreciation deduction on the pipeline in question, the cost or other basis of the property less its estimated salvage value is deductible in equal annual amounts over the period of the estimated *21 useful life of the property. Sec. 1.167(b)-1(a), Income Tax Regs. Basis for this purpose is defined as the adjusted basis provided in section 1011 for the purpose of determining the gain on the sale or other disposition of such property. Section 167(g). Respondent bases his determination that petitioners had no basis in the irrigation system on section 1.165-3(a)(1), Income Tax Regs: SEC. 1.165-3. Demolition of buildings. (a) Intent to demolish formed at time of purchase.--(1) Except as provided in subparagraph (2) of this paragraph, the following rule shall apply when, in the course of a trade or business or in a transaction entered into for profit, real property is purchased with the intention of demolishing either immediately or subsequently the buildings situated thereon: No deduction shall be allowed under section 165(a) on account of the demolition of the old buildings even though any demolition originally *22 planned is subsequently deferred or abandoned. The entire basis of the property so purchased shall, notwithstanding the provisions of section 1.167(a)-5, be allocated to the land only. Such basis shall be increased by the net cost of demolition or decreased by the net proceeds from demolition. Respondent urges that this rule, although applicable by its terms to buildings, is applicable by analogy to land improvements other than buildings. Respondent now concedes that since El Clarvi Rancho intended to use the irrigation system for two years and actually used it for most of 1976 prior to its demolition, a portion of the basis may be allocated to the irrigation and depreciated over the period it was used by the partnership. Consistent with his view that the irrigation system should be treated like a building, respondent argues that the apportionment of the basis should be governed by section 1.165-3(a)(2)(i), Income Tax Regs., and thereby limited to an amount not to exceed the present value of the right to receive rentals from the "buildings" over the period of their intended use, a figure over which the parties disagree. *23 The unstated premise of section 1.165-3(a)(1), Income Tax Regs., is that if a buyer purchases land with the intent to demolish a building existing thereon, the building has no value to the buyer and therefore all of the purchase price should be allocated to the land: Where, as here, there is a purchase of land with the intent to demolish a building situated thereon and erect a new one, no part of the price paid is allocable to the building, since it is deemed that the building has no value to the purchaser and it is the land which is purchased and which alone has value. The entire purchase price, therefore, represents the cost of the land and becomes the purchaser's basis. N.W. Ayer & Son, Inc.,17 T.C. 631. The fact that a certain value was placed on the building at the time of purchase, that the buildings were rented and rent collected, and depreciation claimed is deemed immaterial. The original intention is the determining factor. * * * [Lynchburg National Bank & Trust Co. v. Commissioner,20 T.C. 670, 673-4 (1953), affd. on other grounds, 208 F.2d 757 (4th Cir. 1953).] *24 See also, Hillside National Bank v. Commissioner,35 T.C. 879 (1961). In several cases not cited to us by either party, this rule has been extended by analogy to property other than buildings. In Wood County Telephone Co. v. Commissioner,51 T.C. 72 (1968), the petitioner, a company providing telephone service to several Wisconsin communities, purchased all of the assets of Rudolph, an adjacent telephone company. All of the other telephone companies in the surrounding areas, including the petitioner, had either converted or were in the process of converting from a manual to a dial system, except Rudolph. This modernization of facilities by Rudolph's neighboring phone companies would have required Rudolph to convert and upgrade its own facilities, but Rudolph's board of directors decided to sell the company rather than incur the high costs of conversion. From the time petitioner purchased Rudolph's assets petitioner intended to convert Rudolph's facilities from a manual to a dial system as soon as was physically possible, and this was accomplished by October 1 of the year following the year of purchase. The taxpayer argued that it was entitled *25 to a "loss on property abandoned" with respect to the manual telephone equipment which it had purchased from Rudolph. Although first pointing out that the law is well settled that in order to be deductible a loss must be unintentional or involuntary, we continued: Of more direct effect on the disposition of this case, however, is the Commissioner's regulation and the many decided cases which have established the rule that where a taxpayer purchases real property improved by a building and at the time of the purchase harbors the intention of demolishing the building, he is not allowed a loss deduction under section 165 on account of the eventual demolition of the building, but must allocate the basis for the building to the underlying land. Sec. 1.165-3(a)(1), Income Tax Regs.; Hillside National Bank,35 T.C. 879 (1961); N.W. Ayer & Son, Inc.,17 T.C. 631 (1951); Lynchburg National Bank & Trust Co.,20 T.C. 670 (1953); Providence JournalCo. v. Broderick,supra. In Columbus Brick & Tile Co. Et. Al.,26 B.T.A. 794 (1932), *26 it was held, relying on the real-estate-demolition cases, that where petitioner purchased a brick plant with the intention of discarding some of the machinery thereon, petitioner was not entitled to a loss deduction on the cost of the discarded machinery since the intention to discard had been formed prior to the acquisition of the brick plant. While the rationale for the rule established by the foregoing cases is seldom mentioned, it appears to be founded upon the proposition that if a taxpayer has the intention, at the time of purchase, to demolish an improvement on real property, he obviously is interested in acquiring only the land, and for that reason the basis of the demolished property is allocated only to land, thereby reflecting the actual intention of the purchaser. Similarly, respondent analogizes the instant case to the real-estate-demolition cases and contends that inasmuch as petitioner had the intention, at the time it purchased the Rudolph assets, to abandon virtually all of them as soon as the Rudolph facilities could be converted from a manual to a dial system, petitioner thereby clearly evidenced a desire to obtain something other than the actual assets purchased. *27 * * * [Wood County Telephone Co. v. Commissioner,51 T.C. 72, 78-79 (1968).] On this basis we held that no portion of the cost could be allocated to the abandoned assets since petitioner intended to abandon them. [2]
Application of this long-standing regulation to items other than buildings has been sanctioned by the cases for a very long time, and it is too late in the day to accept petitioners' able argument to the contrary. The rule applicable when property acquired with the intent to demolish has simply been settled. It is true that many of the cases concern improvements that are worthless or even a charge upon the land, while the irrigation system herein had a stipulated value of $42,072 on the date of acquisition. But "[t]he *28 fact that a certain value was placed on the building at the time of purchase, that the buildings were rented and rent collected, and depreciation claimed is deemed immaterial. The original intention is the determining factor." Lynchburg National Bank & Trust Co. v. Commissioner,supra at 20 T.C. 674.(Emphasis added.) While the applicable rule has been settled, it is also settled law that where improvements are used before the intent to demolish is implemented, a basis may be allocated to the improvements not in excess of "the present value of the right to receive rentals from the buildings over the period of their intended use." Cf. section 1.165-3(a)(2)(i), Income Tax Regs.[3] See also Nash v. Commissioner,60 T.C. 503 (1973). The parties have stipulated that in 1976 the land in question would have rented for $10 per acre without the irrigation, while with the irrigation acquired it would have rented for $90 per acre--a difference of $80 per acre. When this $80 per acre differential is multiplied by the *29 number of acres served by the irrigation system acquired (193) the product is $15,440 per year, or $30,880 for the two-year period petitioners intended to use the system when acquired. While the parties have offered alternative formulations, we hold on the peculiar facts before us that a basis equal to the present worth of this figure may be allocated to the drainage system. Petitioners are entitled to a depreciation deduction for the portion of 1976 that they utilized the irrigation system. The remaining portion of the basis allocated to the system pursuant to this opinion is deductible in 1976 (when the demolition was completed) under section 165. *30 Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise stated.↩
2. See also Wilson v. Commissioner,T.C. Memo. 1980-514 (no deduction was allowed for the destruction of a prune tree orchard), and Eaton v. Commissioner, 1936-239 P-H B.T.A. Memorandum Decisions, affd. 95 F.2d 628↩ (9th Cir. 1938) (no deduction allowed for the destruction of apple and pear trees).
3. The applicable portion of this regulation provides in full: Sec. 1.165-3. Demolition of buildings. (a) Intent to demolish formed at time of purchase. * * * (2)(i) If the property is purchased with the intention of demolishing the buildings and the buildings are used in a trade or business or held for the production of income before their demolition, a portion of the basis of the property may be allocated to such buildings and depreciated over the period during which they are so used or held. The fact that the taxpayer intends to demolish the buildings shall be taken into account in making the apportionment of basis between the land and buildings under sec. 1.167(a)-5. In any event, the portion of the purchase price which may be allocated to the buildings shall not exceed the present value of the right to receive rentals from the buildings over the period of their intended use. The present value of such right shall be determined at the time that the buildings are first used in the trade or business or first held for the production of income.If the taxpayer does not rent the buildings, but uses them in his own trade or business or in the production of his income, the present value of such right shall be determined by reference to the rentals which could be realized during such period of intended use. The fact that the taxpayer intends to rent or use the buildings for a limited period before their demolition shall also be taken into account in computing the useful life in accordance with paragraph (b) of sec. 1.167(a)-1.↩