*839 OPINION.
Aeundell:
In these proceedings the respondent determined that the syndicates of which the petitioners were members were taxable as associations, and on that theory he disallowed claimed losses growing out of the operation of the syndicate properties and on the demolition of buildings.
The several syndicates, in our opinion, were not taxable associations. An association that is taxable as a corporation has “ the general form and mode of procedure of a corporation.” Hecht v. Malley, 265 U. S. 144. At the outset it is to be noted that the syndicate agreements provide that the members “ are desirous of acting jointly ”, which is directly opposed to the corporate theory. While some of the provisions of the syndicate agreements vest in the managers substantial powers similar to those of corporate directors, the stipulations disclose that the practice was to decide all questions of importance only after the views of all concerned had been obtained. The syndicates as such had no name, no office, no officers, no stationery, no bylaws or other regulatory rules, no books of record, and no certificates of stock or similar evidence of beneficial interest. *840 The only persons who might be said to stand in the position of officers or directors were the managers, and, as above set out, they did not act as such. The only books of record were those kept by the bank that acted as fiscal agent for the syndicates. The syndicate managers did not organize; they elected no officers, had no office, no stationery, no bylaws; they held no stated meetings and kept no books of record. Neither the managers nor any member held title to any of the syndicate real estate; title was held by two title companies. The fiscal affairs were not handled by the managers or any member, but by a bank.
The syndicate members did not initially invest funds to get the enterprises going. The money to purchase and carry the properties was advanced by the bank on the temporary security of notes of the managers and it was reimbursed by the members upon call by it.
From the above outline of the form and mode of procedure of these syndicates the distinctions between them and corporations are obvious. Moreover, they were not organized with the idea of remaining in existence for any substantial length of time or of actively operating any business, as is generally the case when corporations are created. It is stipulated that the intent was to purchase properties which it was believed could be quickly resold at a profit. It was not intended to improve any properties, and such management and operation as were necessary were to be only those incident to ownership in the interim between purchase and expected sale. Two of the syndicates acquired one property each, one of them acquired two parcels, and the other acquired six. The operation of these properties was entirely fortuitous and outside the purpose for which the syndicates were organized. Unfortunately for the hopes of the participants the acquisitions were made at peak prices, necessitating the holding of the properties for a time during which the management and operation of the properties was necessary but nevertheless incidental to the main purpose. We conclude that the syndicates were not associations taxable as corporations. See The Highlands, etc., Trust No. 1546, 32 B. T. A. 760.
The syndicates here involved meet the tests of the definition of joint ventures. A joint venture is “ a special combination of two or more persons, where, in some specific venture, a profit is jointly sought, without actual partnership or corporate designation.” Bowmaster v. Carroll, 23 Fed. (2d) 825; Motter v. Smyth, 77 Fed. (2d) 77. Property acquired by participants in a joint venture for the purposes of the venture is the property of the participants, McCausey v. Burnet, 50 Fed. (2d) 491; as tenants in common, Clark v. Sidway, 142 U. S. 682. Such being the status of the participants, any income realized upon the venture would be their income, Walter S. Dickey, 14 B. T. A. 1295, and any statutory deductions would be *841 available to them. See Ada R. Giles, 1 B. T. A. 1066, allowing deductions for depletion to a tenant in common. In addition to the general propositions thus far discussed, it is to be noted that in these cases the petitioners were actually out of pocket as the result of the losses sustained in operating the several properties. The funds to maintain and operate the properties were advanced by the fiscal agent, a bank, on notes of the managers and then assessments from time to time were made on the participants by the bank and paid by them. The payments so made were not capital expenditures, but were expenses or operating losses in connection with property owned by the participants as tenants in common. We accordingly hold that the operating losses are allowable deductions to the petitioners in proportion to their interests in the syndicates.
The case of Wild v. Commissioner, 62 Fed. (2d) 777, is distinguishable from these. There the court had the narrow question of whether the enterprise “ was either a partnership, strieti jiuris, or such a joint venture as interposed no fiduciary to insulate the owners from direct taxation.” It was held that the enterprise was not a partnership, and, further, without giving a name to the arrangement, it was found that there was an entity between the participants and the enterprise sufficiently substantial to insulate them from direct liability. The question there was that of the liability of a participant for taxes on undistributed income which the Commissioner treated as partnership income. We reached the same conclusion in Alger Melton, 7 B. T. A. 717. In the present cases we have no question of income of the several ventures, distributed or undistributed, for there was no net income. The recent cases of William S. Gordon, 33 B. T. A. 460 and Oliver W. Birckhead, 33 B. T. A. 466 are also distinguishable. Those cases involved income or loss to syndicate participants in the year of dissolution of the syndicates. Both cases proceeded on the fact of an independent control of syndicate assets vested in the manager. In the Gordon case it is said, “* * * it is immaterial whether we call such an entity an association or a trust, it has a. reality of its own apart from its contributors.” In those cases, and the Wild case, the syndicates were stock pools organized for trading purposes, with substantial powers in the managers. In these cases each syndicate was organized for the limited purpose of buying and selling specific parcels of realty. While the literal words of the syndicate agreements in these cases gave the managers extensive powers, they did not operate in that way. No matter of any importance was undertaken without consultation with all the participants.
We have held that the operating losses of the syndicate properties are allowable to the petitioners. A part of the loss claimed by members of Syndicate No. 2 for 1929 arises from the demolition of build *842 ings on the St. Mary’s College property. Included in the stipulation filed in these proceedings is the following:
* * * While the members did not intend to demolish the buildings or subdivide the property themselves, they did contemplate reselling the property as a unit, and deUevvng that one of the elements which would: enhance the value was the fact that the property by reason of its size and location was suited for sub-division and sale in smaller parcels, contemplated that such sub-division would entail a demolition of the existing structures. However, it was believed that the property might be bought and resold several times as a unit before it would be so sub-divided. [Italics supplied.]
From this stipulation it would appear that the demolition of the buildings was intended to enhance the value of the property. If so, no loss was sustained and no deduction is allowable. Cf. Robert B. Griffin, 17 B. T. A. 255.
Furthermore, the evidence does not establish the cost attributable to the buildings demolished. Apparently no separate sum was paid for the buildings when the property was purchased in 1927. Where land and buildings are purchased for a lump sum it is proper in order to find the basis of each, to allocate the total cost between the two kinds of property based on fair market value. See McGowin-Foshee Lumber Co., 10 B. T. A. 961; Belle Isle Creamery Co., 14 B. T. A. 737. Cf. Prudential Insurance Co. of America, 33 B. T. A. 332. Petitioner’s evidence in this case consisted of the testimony of an appraiser who appraised the buildings in 1927 for the purpose of determining their insurable values. We have no means of knowing how such values compared with the market values of the buildings. In many cases the insurable value is lower than market; in this case it may well be, in the light of the anticipated demolition of the buildings, that insurable value was higher than market. The petitioners offered no evidence as' to the value of the land. In this state of the record we must hold that petitioners have failed to establish the amount allocable as cost of the buildings, and the respondent is sustained in the disallowance of a demolition loss.
An issue in the cases of Joel W. Kaufmann, Docket Nos. 65592 and 70623, concerning income from community property for the years 1929 and 1930, is conceded by counsel for respondent in his brief.
The case of Hattie Hecht Sloss, Docket No. 64835, presents issues as to earned income credit for 1929 and the proper treatment of dividends which the respondent has taxed as income in both 1928 and 1929. Petitioner’s husband was a member of a law partnership, the earnings of which consisted entirely of fees for legal services rendered by the partners. Petitioner filed a separate return for *843 1929 and reported therein $27,793.23 as her community one half of her husband’s share of partnership income. During the year 1929 petitioner’s husband received $600 for services rendered as a director of the Emporium-Capwell Corporation, and the petitioner reported one half thereof as her community share. The respondent computed the earned income credit to which petitioner was entitled in the amount of $5,000. We sustain the respondent on this issue on authority of Mrs. Frank Andrews, 26 B. T. A. 642.
On the issue concerning the dividends, it appears that the petitioner included in her 1929 return dividends received in 1928 from the Hecht Broadway Corporation in the amount of $1,503. Upon examination of her return for 1928 by a revenue agent this item was transferred to 1928 income and she paid a tax thereon. The item should not again be included in 1929 income and we hold for the petitioner on this issue.
Reviewed by the Board.

Decision will be entered in each proceeding imder Rule 50.

TURNER dissents.