**The CLEVELAND ELECTRIC ILLUMINATING COMPANY**

v.

**The UNITED STATES.**

**No. 331–81T.**

United States Claims Court.

Nov. 29, 1984.

Eric M. Oakley, Cleveland, Ohio, for plaintiff.

W.H. Lutz, Jr., T.G. Perris, Cleveland, Ohio, Fredrick L. Fisher, Columbus, Ohio, M.G. Meissner and Squire, Sanders & Dempsey, Cleveland, Ohio, of counsel.

Stella A. Gieseler, Washington, D.C., with whom was Asst. Atty. Gen. Glenn L. Archer, Jr., Washington, D.C., for defendant.

Theodore D. Peyser, Jr., Washington, D.C., of counsel.

## OPINION WITH RESPECT TO DEMOLITION ISSUE

PHILIP R. MILLER, Judge:

### Statement

As its name implies, the plaintiff, Cleveland Electric Illuminating Co. (CEI), is engaged in the business of producing and selling electrical energy.

The question presented is whether or not the plaintiff's demolition in 1970–72 of old residential and other farm structures on real estate plaintiff purchased for resale to potential electrical energy customers who would build large industrial plants thereon may give rise to deductions for losses on its income tax returns for those years.

In or about 1949, plaintiff became aware that there were few large tracts of undeveloped land left in its service area, northeast Ohio. This has an adverse impact on plaintiff, since the lack of available tracts discourages large industrial concerns, which are heavy users of electricity, from locating new plants in northeast Ohio. Plaintiff became concerned that the few available undeveloped tracts would be subdivided and developed in ways other than as sites for large industrial plants.

Accordingly, plaintiff determined that its wholly owned subsidiary, The Ceico Company ("Ceico"), would undertake a program of purchasing large land tracts with a view to preserving them for sale to corporations for development as plant sites. Ceico purchased properties in areas designated by plaintiff and sold such properties to prospective purchasers designated by plaintiff at the specific request of plaintiff. In some instances tracts were purchased with a specific prospective manufacturer in mind, but in many others tracts were sim-

ply purchased and held for eventual sale to customers as needed.

None of the properties acquired for CEI by Ceico was acquired for investment purposes, such as rental income or for appreciation. They were held for disposition as soon as plaintiff could sell them to industrial users of electricity. Neither plaintiff nor Ceico ever intended that Ceico make a profit from the resale of the tracts. The long-run interest of plaintiff, which Ceico was intended to augment, was to increase sales of electricity to such industrial users.

Neither Ceico nor CEI ever intended to use the structures on the properties acquired by Ceico for the furtherance of CEI's electrical utility business. None of such buildings was suitable for CEI's trade or business as an electrical utility company.

Over the years, Ceico has owned a number of buildings on such large land tracts which have been leased to others. The rentals received from these structures were not sufficient to cover the after-tax interest value of the amount of plaintiff's investment in the tracts but were merely partial offsets to the cost of holding the properties.

When properties were acquired with structures on them which could not be rented within 6 to 12 months, the structures were razed. Also, from time to time, when such buildings deteriorated badly from a lack of programmed maintenance or from tenant abuse and rehabilitation was not warranted, the buildings were demolished.

One property acquired by Ceico with a view toward attracting industry was the Wood property in North Perry, Lake County, Ohio. This property, including two houses, barns and other out-buildings, was acquired by Ceico for $180,000 in 1964 and was immediately rented back to the seller at a monthly rental of $450. One house and a barn were razed in February 1970, when local citizens began an effort to have the house declared a Century Home by the Ohio General Assembly. As a Century Home, the property would have been under legal constraints inconsistent with the prospective industrial development Ceico had in mind. The Wood property was sold to CEI in 1971 and the land is currently a part of its Perry Nuclear Plant.

A second property purchased by Ceico for $450,000 for resale as an industrial site was the Champion Nursery property in Perry Township, Lake County, Ohio. Both houses on the Champion Nursery Property were leased from November 13, 1964, the date of purchase, through August 18, 1971. The annual rental received from the houses together with other buildings and the land was $8,000. The houses on the Champion Nursery property were demolished in late 1971 because they had deteriorated to such an extent that the high cost of needed repairs could not be economically justified. One building on the Champion Nursery property was sold to a former owner for the sum of $1.00. The purchaser had to move the structure and fill in the basement excavation, so as to restore it to adjacent grade level. A portion of the Champion Nursery property currently is used by CEI for a transmission line which exits its Perry Nuclear plant. The property otherwise is being held out for sale to any potential industrial user.

A third property purchased for $9,250 to hold for future industrial development was the Gildersleeve property in Ashtabula Township, Ashtabula County, Ohio. Ceico purchased this property on July 11, 1967, as part of a tract Ceico had been putting together since 1952 in order to attract a very large manufacturing plant. Ceico rented the house that was on the property until July 11, 1971, at a rate of $50 per month. On that date, the tenants then in possession were evicted for nonpayment of rent. Thereafter Ceico decided to demolish the house because of the high cost of needed repairs.

On October 19, 1968, Ceico purchased the Garvin property in Mentor, Lake County, Ohio. Ceico rented the buildings on the property for $125 a month until early 1972, by which time unknown persons had so

vandalized the house that restoration could not be justified. The buildings were razed in May 1972.

On November 7, 1968, Ceico purchased the Bush property in Mentor, Lake County, Ohio. The Bush property included a house and a garage. These buildings were rented for $135 a month from the time the property was purchased until May 1972. Because of poor drainage in the area, the building foundation suffered extensive water damage. The cost of repairing the damage, particularly in view of the likelihood that the drainage problem would recur, could not be justified. Accordingly, the buildings were razed.

During the years at issue, 1970 through 1972, plaintiff and Ceico were actively attempting to sell all of the tracts in question but were unable to attract industrial purchasers.

In its federal income tax returns, plaintiff claimed deductions for the depreciation of structures standing on the tracts purchased through Ceico. The deductions were not challenged by the I.R.S. on audit.

The original depreciable bases for the buildings on the Wood and Champion Nursery properties were founded on appraisals prepared by Carl Larsen, M.A.I., on July 27, 1964. The original depreciable bases for the buildings on the other three properties were based in part upon (1) the recommendations by Mr. Larsen in his appraisals, since CEI believed that the properties and buildings were similar in nature, and (2) the ratio of values assessed for property tax purposes.

Plaintiff deducted the sum it alleged to be its remaining tax basis in each of these buildings plus its demolition costs, in the year of demolition, as a loss under I.R.C. § 165. On audit the Service disallowed all deductions for such losses.

The amounts allocated by plaintiff to the structures on the various properties, as a basis for depreciation, their estimated useful lives and the claimed losses on demolition which are at issue herein are as follows:

| Property | Total Price | Year of Acquisition | Annual Rental in Dollars & Percent of Investment (Pretax) | Depreciable Base | Useful Life (in years) | Year of Demolition | Claimed Loss on Demolition |
|---|---|---|---|---|---|---|---|
| Wood | $180,000 | 1964 | $5,400 3.0% | $22,000 1,100 6,200 400 29,700 | 25 20 15 10 | 1970 | $10,740 |
| Champion Nursery | $450,000 | 1964 | $8,000 1.8% | $ 20,100 53,300 42,750 $116,150 126,048* | 25 20 5 15* | 1971 | $ 2,063 |
| Gilder-sleeve | $9,250 | 1968 | $ 600 6.5% | $ 7,750 | 25 | 1971 | $ 6,292 |
| Bush | $25,000 | 1968 | $1,620 6.5% | $14,000 1,000 | 25 10 | 1972 | $12,395 |
| Garvin | $25,000 | 1968 | $1,500 6.0% | $19,000 1,000 | 25 10 | 1972 | $16,594 |

*As changed by I.R.S. after audit

**722**

## Discussion

■ Ordinarily, to be deductible from income a loss must be an event resulting in an unintended or involuntary decrease in value. *Dresser v. United States,* 74 Ct.Cl. 55, 55 F.2d 499, *cert. denied,* 287 U.S. 635, 53 S.Ct. 85, 77 L.Ed. 550 (1932); *Wood County Telephone Co. v. Commissioner,* 51 T.C. 72, 78 (1968); *Gerstle v. Commissioner,* 33 B.T.A. 830, 842 (1935), *aff'd,* 95 F.2d 587 (9th Cir.1938). An exception to this rule, however, may be found in connection with the demolition of buildings. Treasury Regulations on Income Tax (1954 Code) (26 C.F.R.) § 1.165–3 (1970) provides generally:

> *(b) Intent to demolish formed subsequent to the time of acquisition.* \* \* \* [T]he loss incurred in a trade or business or in a transaction entered into for profit and arising from a demolition of old buildings shall be allowed as a deduction under section 165(a) if the demolition occurs as a result of a plan formed subsequent to the acquisition of the buildings demolished. The amount of the loss shall be the adjusted basis of the buildings demolished increased by the net cost of demolition or decreased by the net proceeds from demolition.

On the other hand where at the time of purchase of the land and building, the purchaser intends to demolish the building, the same section of the regulation provides a different treatment for the subsequent demolition:

> *(a) Intent to demolish formed at time of purchase.* [W]hen, in the course of a trade or business or in a transaction entered into for profit, real property is purchased with the intention of demolishing either immediately or subsequently the buildings situated thereon: No deduction shall be allowed under section 165(a) on account of the demolition of the old buildings even though any demolition originally planned is subsequently deferred or abandoned. The entire basis of the property so purchased shall \* \* \* be allocated to the land only. Such basis shall be increased by the net cost of demolition or

decreased by the net proceeds from demolition.

■ The underlying rational for the difference in treatment is that where there is a purchase of land with the intent to demolish a building situated thereon and erect a new one, no part of the price paid is allocable to the building, since it is deemed that the building has no value to the purchaser and it is the land which is purchased and which alone has value. *Nash v. Commissioner,* 60 T.C. 503, 513 (1973); *Wood County Telephone Co. v. Commissioner,* 51 T.C. at 78–79; *Lynchburg National Bank & Trust Co. v. Commissioner,* 20 T.C. 670, 673–74 (1953), *aff'd,* 208 F.2d 757 (4th Cir.1953). Another way of looking at the matter, which arrives at the same result, is that when a taxpayer purchases real estate with a building thereon which is unsuitable for the purchaser's intended use of the property, the subsequent clearing of the land by the demolition of the building is not a loss to the taxpayer but an intended enhancement of his investment. This is because the cleared land is ultimately what he intended to acquire and the amount he paid to have the building demolished is an additional cost of the cleared land. *Grestle v. Commissioner,* 33 B.T.A. 830, 842 (1935), *aff'd,* 95 F.2d 587 (9th Cir.1938).

■ Under the same regulation the fact that the purchaser, having the intent to demolish subsequently, also intends to rent the buildings out during the interim, does permit him to allocate some portion of the purchase price to other than the land alone, but such allocated basis may "not exceed the present value of the right to receive rentals from the buildings over the period of their intended use," and it may be depreciated over such period. Treas.Regs. § 1.165–3(a)(2)(i). But if the buildings are demolished at the end of such period, no deduction for any loss is allowed. Only if they are demolished prior thereto, is a loss deduction permitted—and it is limited to the portion of the allocated amount which has not been recovered through depreciation or otherwise. Treas.Regs. § 1.165–3(a)(2)(ii).

Each party claims that the regulations support its position. Neither contends that any portion of the regulations is invalid.

■ The undisputed facts clearly support the defendant. Plaintiff purchased farm land with old residences and other farm buildings for the express purpose of reselling such real estate to industrial organizations, without any intent to profit, to induce them to construct industrial plants thereon which would be large consumers of electrical energy. The old farm buildings were obviously incompatible with such intended use and therefore added nothing to the value of the land. Indeed, in all probability they detracted from such value because they would require additional costs for demolition before any industrial plants could be erected on the sites. Thus, plaintiff's entire purchase price for each parcel of real estate was properly allocable solely to the land, and no portion was allocable to the buildings which could provide a basis for a demolition loss. Even if, at the time of purchase, plaintiff intended to rent out the buildings for the interim period between acquisition and demolition, it was entitled to allocate to the buildings only a basis equivalent to the present value of the right to receive the rentals over the period of their intended use, which it could recover by way of depreciation or amortization allowances. Thus, except where the demolition occurred prior to the end of the anticipated term, there could be no basis for a demolition loss.

■ Even if it turned out that the demolitions took place prior to the end of the anticipated rental terms, there is no basis for any of the demolition losses here sought, as the record does not contain evidence as to the values at the time of the purchases of the rights to receive the rentals from the buildings over the periods of their intended use; nor does the record reflect that plaintiff has not already recovered such present values by way of aggregate depreciation allowances based on appraised values of the buildings. The burden was on plaintiff to establish both that it sustained a loss and the amount thereof

before it could become entitled to any deduction (*Welch v. Helvering*, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933); *Lewis v. Reynolds*, 284 U.S. 281, 283, 52 S.Ct. 145, 146, 76 L.Ed. 293 (1932)), and plaintiff has not carried such burden.

■ Plaintiff contends that its prolonged rentals of the buildings, for from 4 to 7 years after acquisition, proves that it did not originally intend to demolish the buildings, but to hold them as investments. But this contention is refuted by plaintiff's concessions that the purpose of renting was merely to reduce the cost of carrying the real estate until a purchaser could be found and that the properties were held for sale, without any intent to profit, to the first industrial electrical energy customer which came along regardless of the rentals. It is further refuted by the relatively small rentals as compared to the amount of plaintiff's investment in each tract, and by the facts that with respect to four of the five tracts at issue the buildings were in such disrepair that plaintiff found it more economical to incur the cost of demolition rather than the cost of repair and that with respect to the remaining tract plaintiff razed the buildings to prevent any restrictions on its original projected industrial use. It may be that plaintiff did not originally have in mind precise dates for the intended demolitions, but the regulation does not require that.

■ Finally, plaintiff asserts that the defendant has not established that plaintiff did not intend to sell the lands together with the buildings to the industrial purchasers who would then demolish the buildings themselves. But the fact is that plaintiff itself demolished the old buildings rather than hold them in a state of disrepair for a potential customer to demolish them. More important, whether plaintiff intended to demolish the buildings itself or to hold them for the customers to demolish should make no difference in the result herein. In either event, plaintiff's basis would be allocated solely to the land, for it could not use the buildings in its own business and did not expect its industrial customers to use

them in theirs or to pay plaintiff for the buildings.

## Conclusion

For the foregoing reasons, it is determined herein that the Commissioner of Internal Revenue properly disallowed plaintiff's claims for deduction of demolition losses for the taxable years 1970–72, and defendant is entitled to judgment dismissing the portions of its complaint stating such claims.